**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ABRAHAM KLEINMAN,

                                   Plaintiff,

            v.                                                    Case No. 1:22-cv-2566-ALC

ROC CAPITAL HOLDINGS LLC,
CHAIM PORGES, and HELENA
PORGES,

                                   Defendants.

**DECLARATION OF ABRAHAM KLEINMAN IN SUPPORT OF *EX PARTE***
**MOTION FOR THE APPOINTMENT OF A TEMPORARY RECEIVER**
**AND FOR EXPEDITED DISCOVERY**

ABRAHAM KLEINMAN declares pursuant to 28 U.S.C. § 1746:

1.      I am the Plaintiff in the above-captioned action and have personal knowledge of the facts described in this Declaration.  I offer this declaration in support of Plaintiff's Motion for the appointment of a temporary receiver and to expedite discovery.

**I.      The Underlying Real Estate Transactions**

2.      This action arises out of two separate real estate deals between myself and Mr. Porges: the New Jersey Transaction and the Illinois Transaction.

**A.      The New Jersey Transaction**

3.      The New Jersey Transaction involved a portfolio of five properties located in New Jersey (the "New Jersey Properties").[1]

---

[1] The New Jersey Properties include: (1) 81 Lanning Avenue, Penns Grove, NJ 08069 [Block 19 Lot 4]; (2) 1000 Cinnaminson Avenue, Palmyra, NJ 08065 [Block 48 Lot 12]; (3) 66 Warren Street, Beverly, NJ 08010 [Block 1483 Lot 6]; (4) 357 South Main Street, Williamstown, NJ 08094 [Block 11702 Lot 3]; and (5) 519 and 521 West Broad Street, Palmyra, NJ 08065 [Block 60 Lots 5.01 and 5.02].

4.      The properties were owned by a single member LLC I controlled called 5 Bundle Tower LLC.

5.      On October 23, 2020, I entered into a contract to sell the New Jersey properties to Mr. Porges for a purchase price of $3,150,000.  On December 22, 2020, the parties executed an amendment to the contract of sale that reduced the purchase price to $2,500,000.

6.      Jason J. Rebhun, Esq. of the Law Offices of Jason J. Rebhun, P.C., 40 Wall Street, 45th Floor, New York, NY 10007, represented Mr. Porges in the New Jersey Transaction.

7.      Thereafter, Mr. Porges worked with Eastern Union, a commercial mortgage broker, and Broadview Capital, LLC, the lender, to secure financing for the loan.  Mr. Porges was eventually able to secure a loan for approximately $1,781,000.

8.      At the lender's request, however, the entire transaction was bifurcated, resulting in the following structure:

        a.      The properties located at (i) 519 and 521 West Broad Street, Palmyra, NJ 08065; (ii) 66 Warren Street, Beverly, NJ 08010; and (iii) 357 South Main Street, Williamstown, NJ 08094, were sold for $2,000,000.  Mr. Porges obtained a loan for $1,455,000 secured by a mortgage on these properties.

        b.      The other two properties, namely, the properties located at (iv) 1000 Cinnaminson Avenue, Palmyra, NJ 08065; and (v) 81 Lanning Avenue, Penns Grove, NJ 08069, were sold for $500,000.  Mr. Porges obtained a loan for $326,000 secured by a mortgage on these properties.

9.     The loan-to-value ("LTV") ratio for the loan was approximately 71% of the $2,500,000 contract price.[2] Thus, to close on the loan, Mr. Porges was required to produce the remainder of the contract price plus all closing costs.

10.    On or about January 13, 2021, Riverside Abstract, the title company for the transaction, alerted the parties that they needed full funding of the purchase price in order to close.

11.    This requirement was reiterated in multiple emails circulated on January 14, 2021 as the parties were preparing to close.  For example, on January 14 at 12:47 pm, Sara Chang of Broadview Capital circulated a list of outstanding items, which included "[p]roof of borrower's balance wire."  She repeated her request for "[p]roof of borrower's balance wire" twice more, including at 2:04 pm and 2:30 pm.  A copy of the January 14, 2021 email thread is attached as **Exhibit 1**.[3]

12.    Mr. Rebhun was copied on those emails.  *See* Ex. 1.

13.    The term "proof of borrower's balance wire" refers to the balance of the contract price that Mr. Porges needed to produce to fund the entire deal. This figure is reflected in the settlement statement in the line item for "Balance Due From Buyer."  *See id.*

14.    Mr. Porges did not have the funds needed to close.  I therefore agreed to facilitate a loan to Mr. Porges in exchange for a promissory note and confession of judgment for the amount of the indebtedness and an assignment of interest in the acquiring entity, a New York limited liability company called Bleubell Broad LLC.

---

[2] The loan-to-value ("LTV") ratio assesses the ratio of a particular debt relative to the value of the collateral. The LTV ratio is calculated by dividing the loan amount by the appraised value of the asset. The higher the ratio, the higher the cost of the loan.

[3] Mr. Porges inadvertently attached this email thread as an exhibit in a related action pending in the Supreme Court of the State of New York, County of Kings, under the caption *Porges v. Kleinman*, Index No. 510385/2022.

15.     On January 14, 2021, I instructed my attorney to transfer $790,000 to Jason Rebhun.  The extra funds were sent to Mr. Porges to ensure that there would be enough money the balance of the contract price and all closing costs.

16.     On January 14, 2021 at 2:27 pm, my attorney initiated a wire transfer for $790,000 to Jason Rebhun's attorney trust account.[4]  A true and correct copy of the email confirmation for the wire transfer is attached as **Exhibit 2**.

17.     At 3:28 pm on January 14, Jason Rebhun wired $790,000 to Riverside Abstract with the text: "For further credit to Bleubell Broad LLC."  A true and correct copy of the Wire Transfer Outdoing Request initiated by Jason Rebhun is attached as **Exhibit 3**.

18.     My attorneys then prepared four documents for Mr. Porges to sign: (i) a promissory note in the original principal amount of $540,000 (the "540 Note"); (ii) an Affirmation of Confession of Judgment authorizing Mr. Kleinman to enter judgment against Mr. Porges in the principal sum of $540,000 (the "540 COJ"); (iii) a *Shtar Iska* Agreement Concerning Interest on Loans (the "*Iska* Agreement"); and (iv) an assignment of interest dated January 13, 2021 making Mr. Kleinman a 50% owner of Bleubell Broad LLC (the "New Jersey Assignment").

19.     I gave these documents to Mr. Porges.  He brought them to a notary to execute and then returned signed and notarized copies of each document to me.  Copies of the 540 Note, the 540 COJ, the *Iska* Agreement, and the New Jersey Assignment are attached as **Exhibits 4**, **5**, **6** and **7**, respectively.

20.     The loan from Broadview Capital funded on January 15, 2021 and the New Jersey Transaction closed.  The settlement statements for the New Jersey Transaction confirm that the

---

[4] Extra funds were sent to Mr. Porges to ensure that there would be enough money the balance of the contract price and all closing costs.

principal amount of the loan was $1,781,000.  The remainder of the balance of the contract price was not funded by Mr. Porges.  Rather, it was funded with the money I had my attorneys wire to Jason Rebhun on January 14, 2021. The settlement statements for the transaction confirm that the "Balance Due From Buyer" totaled $726,373.03.  Copies of the closing statements are attached as **Exhibit 8**.

21.     After the New Jersey Transaction closed and all disbursements were made, I determined that Mr. Porges' indebtedness exceeded $540,000 and that the 540 Note was therefore insufficient.

22.     At my request, my attorneys prepared a revised promissory note in the original principal amount of $675,000 (the "675 Note") and an affirmation of confession of judgment authorizing the entry of judgment in the same amount (the "675 COJ"),

23.     I provided these documents to Mr. Porges, who returned signed and notarized versions of each document the same day.  True and correct copies of the signed and notarized versions of the 675 Note and 675 COJ are attached as **Exhibit 9** and **Exhibit 10**, respectively.

**B.     The Illinois Transaction**

24.     The Illinois Transaction involved a portfolio of four properties located in Chicago (the "Chicago Properties") owned by two separate single member LLC I controlled called Chicago First Tower LLC and Chicago Second Tower LLC.[5]

25.     In March 2021, I contracted to sell the Chicago Properties to Mr. Porges and his partner (Jonathan Greenwald) for a purchase price of $5,460,000.00.

---

[5] The Chicago Properties included: (i) 7554 South Blackstone Avenue, Chicago, Illinois; (ii) 7300 South Wabash Avenue, Chicago, Illinois; (iii) 6956 South Wabash Avenue a/k/a 22 East 70th Street, Chicago, Illinois; and (iv) 643 East 71st Street, Chicago, Illinois.

26.     Jason Rebhun represented Mr. Porges and Mr. Greenwald in the Illinois Transaction.

27.     Mr. Porges was able to secure a loan brokered by Castling Capital and funded by A&S Capital LLC in the principal amount of $4,893,750.

28.     To cover the $566,250 spread between the purchase price and the loan, as well as an additional $357,480.63 of purchaser expenses, Mr. Porges agreed to provide a promissory note for $923,730.63 and an assignment of his membership interest in the Chicago entities to Mr. Kleinman.

29.     The Illinois Transaction closed on or about March 9, 2021.

30.     On March 10, 2021, Mr. Porges appeared at my attorney's offices and executed several documents, including a promissory note for $923,730.63 (the "923 Note"), a confession of judgment for the same amount, and an assignment of interest transferring to me his 50% interest in the Chicago entities (the "Chicago Assignment").

31.     It is my understanding that Mr. Porges' attorney (*i.e.*, Jason Rebhun) objected to the confession of judgment and asked that it be voided.  Mr. Rebhun also had Mr. Porges re-sign a new version of the 923 Note.  Mr. Rebhun did not modify or object to any of the other documents signed by Mr. Porges signed the night before, including the Chicago Assignment.

32.     On March 11, 2021 at 3:34 pm, Jason Rebhun sent my attorneys an email containing the 923 Note, the Chicago Assignment, and all documents that Mr. Porges executed the night before (except for the confession of judgment).

33.     Then, as 3:44 pm, Jason Rebhun sent my office a revised version of the 923 Note.[6] The 923 Note is attached as **Exhibit 11**.  The Chicago Assignment is attached as **Exhibit 12**.

_____

[6] The new 923 Note provided that "[n]o interest shall be payable for the first two (2) months from the date hereof." The version attached to the 3:34 pm email had waived interest payments for a period of six months.

**C.    Mr. Porges Defaulted on the 675 and 923 Notes**

34.    Mr. Porges failed to make the payments due under the 675 Note and the 923 Note.

35.    By letter dated December 29, 2021, my attorneys demanded payment of the accelerated principal and balance of each Note.  The letter further stated that if payment was not received by January 3, 2022, I intended to file the 675 COJ in New York state court, as follows:

> If Payment is not received by Monday, January 3, 2022 at 10:00 am EST, Lender intends to file the Confession of Judgment with the New York Court for the 675 Note and commence action for summary judgment in lieu of complaint on the 923 Note.  Pursuant to the Notes, Lender will seek its attorneys' fees with respect to such filings.

A copy of the December 29, 2021 letter is attached as **Exhibit 13**.

36.    Mr. Porges did not respond to the December 29, 2021 demand letter.

**II.    The Porges Defendants Fraudulently Obtain a New Loan From Roc Capital and Record a Mortgage Against the New Jersey Properties**

37.    In or about October, 2021, Mr. Porges, Jason Rebhun, and defendant Helena Porges (the mother of Mr. Porges) conspired take out a new loan against the New Jersey Properties using fraudulent corporate documents that falsely stated that Helena Porges was the 90% owner of Bleubell Broad.

38.    These documents included, among others, an Amended Operating Agreement dated February 1, 2021 (attached as **Exhibit 14**) and a Unanimous Written Consent of the Members of Bleubell Broad LLC dated October 18, 2021 executed by Helena Porges (attached as **Exhibit 15**). Each document falsely indicated that Defendant Chaim Porges was a 10% owner of Bleubell Broad LLC and that Helena Porges was a 90% owner of Bleubell Broad.

39.    Helena Porges also herself out to be the "Managing Member" or "90% Owner" of Bleubell Broad, in numerous other documents, including: (i) Commercial Mortgage, Security Agreement and Fixture Filing; (ii) Collateral Assignment of Leases and Rents; (iii) Environmental

Indemnity Agreement; (iv) Commercial Guaranty; (v) Loan Agreement; (vi) Commercial Promissory Note; (vii) Correction Agreement Limited Power of Attorney; (viii) Borrower Certification and Authorization; (ix) Pledge and Security Agreement; (x) UCC Financing Statement; (xi) Bleubell Broad LLC Membership Interest Certificate; and (xii) Adjustable Rate Rider.

40.    I believe that Jason Rebhun also participated in the fraud, as he issued an Opinion Letter and First Lien Certification dated October 18, 2021, in which he represented that "[Bleubell Broad] is owned 90% by HELENA PORGES and 10% by CHAIM PORGES." A copy of the October 18 opinion letter is attached as **Exhibit 16**.

41.    But Jason Rebhun had also issued an opinion letter in connection with the New Jersey Transaction that stated: "Chaim Porges, as Sole Member [of Bleubell Broad LLC] is authorized to execute the documents and bind [Bleubell Broad] to same." A copy of the January 13, 2021 opinion letter is attached as **Exhibit 17**.

### III.    Mr. Porges, Aided by Jason Rebhun, Recently Cashed Out on The Illinois Properties

42.    I recently learned that Mr. Porges sold the Chicago Properties without my consent for $7,500,000.

43.    Property records obtained from the Cook County Clerk's Office show that on July 28, 2021, Mr. Porges executed two separate warranty deeds[7] conveying the Chicago Properties to an entity called Regeis Chicago Realty LLC. Copies of the July 28 warranty deeds are attached as **Exhibit 18**.

---

[7] One for Chicago First Tower LLC and one for Chicago Second Tower LLC.

44.     The website of the Cook County Clerk indicates that the warranty deeds were not recorded until February 3, 2022, and were not uploaded to the Cook County Clerk's system until March 22, 2022.

45.     Each warranty deed was signed by "Chaim Porges, the Sole Manager of Chicago [First/Second] Tower LLC."

46.     Each warranty deed states that it was prepared by Jason Rebhun, and each warranty deed was notarized by Jason Rebhun.  *See* Ex. 18.

47.     Incredibly, Jason Rebhun prepared these warranty deeds just a few short months after he approved the Chicago Assignment, an instrument that "reduce[d] [Chaim Porges'] membership in the Company to Zero (0%) percent."  *See* Ex. 12.

## IV.     Status of Litigation to Date

## A.     The Collection Action

48.     On January 4, 2022, I moved for entry of judgment on the 675 Note in the Supreme Court of the State of New York, County of Kings under the caption *Kleinman v. Porges*, Index No. 500593/2022 (the "Collection Action").

49.     On January 10, 2022, judgment was entered in my favor in the amount of $708,750.00.

50.     Thereafter, in an effort to enforce the Judgment, my attorneys served post-judgment disclosure on Mr. Porges, various non-party entities associated with Mr. Porges, and key third parties involved in the mortgage and refinance, as detailed below.

### *1.  Plaintiff's Post-Judgment Discovery Efforts in the Collection Action*

51.     <u>Chaim Porges</u>: On February 4, 2022, Plaintiff served a deposition subpoena on Mr. Porges ordering him to appear at the offices of Plaintiff's counsel for a deposition on February 15,

2022 at 10:00 am.  Mr. Porges did not appear for the deposition. A transcript of the statement of Mr. Porges' default taken on record is attached as **Exhibit 19**.

52.     On February 16, 2022, Plaintiff served an information subpoena on Mr. Porges. The subpoena was delivered on February 19, 2022, so Mr. Porges' response was due on February 26, 2022.  Mr. Porges did not respond to the information subpoena.

53.     Helena Porges: On February 2, 2022, Plaintiff served a deposition subpoena and a restraining notice on Helena Porges ordering her to appear at the offices of Plaintiff's counsel for a deposition on February 16, 2022.  Helena Porges did not appear for the deposition and did not respond to the information subpoena. A transcript of the statement of Mrs. Porges' default taken on record is attached as **Exhibit 20**.

54.     Plaintiff served a second information subpoena with restraining notice on Helena Porges on February 16, 2022.  That subpoena, too, went unanswered.

55.     Skillman 4 LLC: Skillman 4 LLC is a New York limited liability company and is the record owner of 49 Skillman Street, Apartment 4A, Brooklyn, NY.  Mr. Porges and his wife conveyed their personal residence to Skillman 4 LLC on or about November 27, 2019.   On February 4, 2022, Plaintiff served an Information Subpoena with Restraining Notice on Skillman 4 LLC.  Under CPLR §5224(a)(3), Skillman 4 LLC's response to the Information Subpoena was due no later than February 12, 2022.  No response was every received from Skillman 4 LLC.

56.     Plaintiff served a second information subpoena with restraining notice on Skillman 4 LLC on February 16, 2022.  Again, Skillman 4 LLC did not respond to the second information subpoena.

57.     Rachel Porges: Rachel Porges is the wife of Mr. Chaim Porges.  On February 16, 2022, Plaintiff served an information subpoena with restraining notice on Rachel Porges seeking

information regarding Mr. Porges' assets, his business relationships, Skillman 4 LLC, and his various entities. Rachel Porges did not respond to the information subpoena.

58.     The Spencer Street Entities: A search conducted by Plaintiff identified four entities controlled by Chaim Porges with the same registered address for service of process: (i) 7549 Kenwood LLC; (ii) Chicago Broad LLC; (iii) CP Renovations Inc.; and (iv) Superb Funding LLC (together, the "Spencer Street Entities").  On February 4, 2022, Plaintiff served an Information Subpoena with Restraining Notice on each of the Spencer Street Entities.  The subpoenas were delivered on February 5, 2022, and responses thereto were due on February 12, 2022.  No responses were received from any party.

59.     Plaintiff served additional information subpoenas with restraining notices on the Spencer Street Entities on February 16, 2022.  Those subpoenas have been ignored.

60.     Other Porges Entities: On February 4, 2022, Plaintiff served additional information subpoenas on another three entities controlled by Mr. Porges, including: (i) DMBRG LLC; (ii) 1074 Fulton Street LLC; and (iii) Rent Right LLC.  The subpoenas were delivered on February 5, 2022, and responses thereto were due on February 12, 2022.  No responses were received from any entity.

61.     Plaintiff served a second set of information subpoenas on these entities on February 16, 2022.  These subpoenas have been ignored.

62.     Roc Capital Holdings, LLC: As discussed above, Roc Capital Holdings was the lender in the fraudulent refinance.  On February 2, 2022, Roc Capital's general counsel accepted service of an Information Subpoena with Restraining Notice and a Subpoena Duces Tecum.  Roc Capital's response to the information subpoena was due on February 9, 2022, and its response to the subpoena duces tecum was due within 30 days.  To date, no response has been received.

63.    <u>Eastern Union</u>: Eastern Union served as the mortgage broker in the New Jersey Transaction.  On February 4, 2022, Plaintiff served an Information Subpoena with Restraining Notice and Subpoena Duces Tecum on Eastern Union.  Eastern Union's response to the information subpoena was due on February 11, 2022.  Its response to the subpoena duces tecum was due by February 18, 2022.  Eastern Union ignored both subpoenas.

64.    <u>Broadview Capital LLC</u>: Broadview Capital was the lender in the New Jersey Transaction.  On February 8, 2022, Plaintiff served an Information Subpoena with Restraining Notice and a Subpoena Duces Tecum on Broadview Capital.  Broadview Capital responded to the Information Subpoena and made an incomplete production of documents relating to the New Jersey Transaction.

65.    <u>Riverside Abstract</u>: Riverside Abstract was the title company for the New Jersey Transaction and the unauthorized refinance.  Plaintiff served a subpoena duces tecum and an information subpoena on Riverside Abstract on February 4, 2022.  Riverside Abstract made a partial production of documents relating to the closing but has not produced any internal correspondence relating to the deal.

66.    <u>42 Starr LLC</u>: In a January 24, 2022 response to an information subpoena, Investors Bank indicated that Mr. Porges was the authorized signer on an account held by 42 Starr LLC that has a balance of $569,958.82.  Thereafter, on February 4, 2022, Plaintiff served an Information Subpoena with Restraining Notice on 42 Starr LLC.  On February 5, 2022, my attorney had a conversation with Mr. Levi Gross, who identified himself as the property manager of 42 Starr LLC.  Mr. Gross denied that Mr. Porges is associated with 42 Starr LLC but stated that he would not respond to the information subpoena.  Mr. Gross did not respond to the subpoena, nor did he

respond to a February 11, 2022 email reminding him that he was statutorily obligated to respond to the subpoena.

67.    <u>Castling Capital</u>: Castling Capital was the broker in the Illinois Transaction.  On February 8, 2022, Plaintiff served a deposition subpoena, an subpoena duces tecum, and an information subpoena with restraining notice on Castling Capital.  Castling Capital has defaulted on each subpoena.

### 2.   *Motion Practice in the Collection Action*

68.    On February 16, 2022, Plaintiff moved by order to show cause for an ordering compelling Chaim Porges and the non-parties to comply with the subpoenas.  Plaintiff also sought sanctions against Chaim Porges.

69.    The court signed the order to show cause on 18, the order was entered on February 22, 2022, and the matter was set for a hearing on March 16, 2022.  The hearing was later adjourned to March 18, 2022.

70.    On March 16, 2022, Mr. Porges, through counsel, moved for an extension of time to respond to the order to show cause.  In the letter, Mr. Porges's counsel disputed the validity of the 675 Note, the 675 COJ, and the New Jersey Assignment.

71.     On April 1, 2022, Mr. Porges submitted his opposition to the order to show cause. The opposition was supported by: (i) an "Affirmation of Facts" submitted by Jason Rebhun Esq., NYSCEF No. 44, attached as **Exhibit 21**; (ii) Affirmation of Chaim Porges in Opposition to Order to Show Cause, NYSCEF No. 45, attached as **Exhibit 22**; and (iii) an Attorney Affirmation in Opposition to Order to Show Cause with exhibits thereto, NYSCEF No. 46, attached as **Exhibit 23**.

72.     The court held a hearing on the order to show cause on April 6, 2022, but did not decide the motion.  The application is still pending.

73.     Plaintiff also filed a separate order to show cause on February 22, 2022 seeking an order compelling Helena Porges to comply with the deposition subpoena.  That application is in limbo – the Court has not yet signed the order to show cause to set a briefing schedule for the motion.

**B.     The *Roc Capital* Action**

74.     On March 29, 2022, Plaintiff commenced an action in the United States District Court for the Southern District of New York under the caption *Kleinman v. Roc Capital Holdings LLC, Chaim Porges and Helena Porges*, No. 1:22-cv-02566-ALC (the "Roc Capital Action").

75.     The Complaint in the Roc Capital Action asserted three claims: (i) breach of contract based on the 923 Note; (ii) a declaration that the New Jersey Assignment was valid and that Plaintiff is a 50% owner of Bleubell Broad LLC; and (iii) an order vacating the Roc Capital Mortgage, declaring it to be void and unenforceable, and striking it from the record.

76.     The defendants in the Roc Capital Action were duly served, but defaulted in responding to the complaint.

77.     The clerk of court issued a certificate of default as to the Porges Defendants on April 25, 2022 (ECF No. 15) and as to defendant Roc Capital on April 26, 2022 (ECF No. 20).

**C.     The COJ Action**

78.     On April 8, 2022, Mr. Porges commenced an action in the New York State Supreme Court under the caption *Porges v. Kleinman*, 510385/2022 to vacate the judgment on the ground that the confession of judgment was "fraudulent" (the "COJ Action").

79.     Together with the summons and complaint, Mr. Porges moved by order to show cause for a temporary restraining order "[s]taying and enjoining all enforcement of the

aforementioned judgment." Mr. Porges also asked the court to quash all subpoenas served in the Collection Action.

80.     The evidentiary submissions accompanying the TRO were essentially identical to what was submitted in opposition to the sanctions motion in the Collection Action, and included an Affirmation of Chaim Porges, NYSCEF No. 3, attached as **Exhibit 24**, an Affirmation of Facts by Jason Rebhun, NYSCEF No. 4, attached as **Exhibit 25**, and an attorney affirmation, NYSCEF No. 5, attached as **Exhibit 26**.

81.     On April 11, 2022, the Court held a hearing on the TRO and granted a limited stay of "all enforcement and execution upon the aforementioned Judgment."

### V.     False and Misleading Statements and Omissions in Court Filings by Mr. Porges and Attorney Rebhun

82.     The affirmations submitted by Mr. Porges and Jason Rebhun contain numerous false and misleading statements.

#### A.     False and Misleading Statements Regarding the 675 Note

83.     As explained above, Mr. Porges closed on the New Jersey Transaction without using even one penny of his own money. Approximately $1.8 million was financed by Broadview Capital. The remainder of the purchase price was financed by a loan facilitated by Mr. Kleinman.

84.     My attorney sent $790,000 to Jason Rebhun on January 14, 2021 at approximately 2:27 pm. *See* Ex. 2 (wire transfer from Mark Nussbaum to Jason Rebhun). Jason Rebhun then wired $790,000 to Riverside Abstract with a notation indicating that the funds were "[f]or further credit of Bleubell Broad LLC." *See* Ex. 3.

85.     The transfers coincided with a series of emails from Lender requesting "[p]roof of borrower's balance wire." *See* Ex. 1. Jason Rebhun was copied on these emails. *Id.*

86.     Yet, in two separate affirmations, Jason Rebhun has repeatedly represented that Mr. Porges does not owe me any money:

    a.  Jason Rebhun describes the 675 Note as a "purported debt."  (Ex. 21, ¶4; Ex. 25, ¶4).

    b.  Though I am told that Plaintiff's counsel's affirmation in support of the instant Order to Show Cause claims that the aforementioned documents were executed and delivered as financing for the "remainder of the purchase price of the New Jersey Transaction . . . I do not believe this is correct.  There was no remainder of the purchase price, which was paid in full at closing.  (Ex. 21, ¶5; Ex. 25, ¶5).

    c.  I was never made aware prior to [Plaintiff's] enforcement efforts that Plaintiff would be seeking the funds represented in the [675] Note and Confession of Judgment. (Ex. 21, ¶10; Ex. 25, ¶10).

    d.  Plaintiff's representation that such funds were required as part of the purchase price is false. (Ex. 21, ¶12; Ex 25, ¶12).

    e.  . . . Plaintiff . . . did not provide [the 675 Note or COJ] to me, the lenders, or the title company to review, because he knew he was not entitled to those funds. (Ex. 21, ¶13; Ex. 25, ¶13)

    f.  As a matter of both law and equity, this Court should not allow the fraudulently obtained [675] Note and Confession of Judgment from the New Jersey Transaction to be enforced.  (Ex. 21, ¶21; Ex. 25; ¶21).

87.     What's more, although Jason Rebhun was copied on emails from Broadview Capital that requested "[p]roof of borrower's balance wire" (*cf.* Ex. 1), he represented in two separate court filings that "[n]one of the correspondence" on the day of closing referenced a debt for the remainder of the purchase price, as follows:

        In the days leading up to the closing on the New Jersey Transaction, I was copied on a great deal of correspondence between myself, the attorneys mentioned above, and the title company as everyone worked to get to a closing.  None of that correspondence referenced a Note, a Confession of Judgment, or even a debt for the alleged "remainder of the purchase price." (Ex. 21, ¶8; Ex. 25, ¶8).

**B.     False and Misleading Statements and Omissions Regarding the Circumstances Surrounding the Execution of the 675 Note**

88.     As described in detail above, Mr. Porges signed and notarized a note, a COJ, and Iska agreement, and an assignment of interest on Thursday, January 14, 2021, *i.e.*, the same day that the funds were wired from my attorney to Jason Rebhun.  *See* Exhibits 4-7.  Mr. Porges had brought those documents to a nearby pharmacy to get them notarized,[8] and could have asked Jason Rebhun to review them

89.     The next day, after the loan from Broadview Capital funded and the disbursements were calculated, I asked him to sign the 675 Note and COJ to reflect the actual indebtedness.

90.     But in two separate affirmations, Mr. Porges now pretends that he was tricked into signing the 675 Note and COJ late on a Friday afternoon.  *See* Ex. 22, ¶¶12-18; Ex. 14-18.

91.     Mr. Porges fails to disclose, however, that this was the second set of such documents that he had signed.

**C.     False and Misleading Statements and Omissions Regarding Mr. Porges' Ability to Speak English**

92.     These same filings also attempted to paint Mr. Porges as the sympathetic victim who was duped into signing documents that he could not read or understand.  To that end, Jason Rebhun affirmed:

> [Mr. Porges'] first language is Yiddish. His English skills are not great. Though I can usually communicate with [Mr. Porges], [Mr. Porges] does not easily understand concepts and has to have them explained to him. [Mr. Porges] relied upon me for an explanation of all legal documents in connection with these real estate dealings.  (Ex. 21, ¶20; Ex. 25, ¶20).

---

[8] Incidentally, Mr. Porges used the same notary when he signed the affirmations that were submitted in the Collection Action and the COJ Action.

93.    In his own affirmations, Mr. Porges represented that because his first language was Yiddish, he needed Jason Rebhun to explain the "content and import" of all legal documents, as follows:

> Yiddish is my first language.  Because English is not my first language, and I rely on my attorney to explain to me both the content and import of legal documents, I did not understand the content of the documents I was signing. (Ex. 22, ¶20).

> Yiddish is my first language.  I studied English through only about 6th grade, and I attended a yeshiva and Rabbinical college at which primary instruction was not in English.  Because English is not my first language, I am not well educated in it, and I rely on my attorney to explain to me both the content and import of legal documents, I did not understand the content of the documents that I was signing at the notary's house had I been given a reasonable opportunity to read them (which I was not).  (Ex. 24, ¶21).

94.    These same false facts were then repeated in the attorney affirmations submitted in the Collection Action and the COJ Action.  *Cf.* Ex. 23, ¶22 ("English is not [Mr. Porges'] first language, and he did not understand the content or significance of the documents he was rushed and pressured into signing on pain of losing the deal into which he had invested so much[9]."); Ex. 26; ¶22 (same).

95.    ***But Jason Rebhun does not speak Yiddish***, a material fact that was omitted by Mr. Porges and his attorneys in ***six*** separate sworn court filings.

### D.    False and Misleading Statements Regarding the Entry of Judgment in the Collection Action

96.    In two sworn affirmations, Mr. Porges claims that that he was "blindsided" and that "Judgment was entered against me without notice."  Ex. 22, ¶29; Ex. 24, ¶30.

---

[9] Incidentally, this statement is also false because Mr. Porges did not invest any of his own money in the New Jersey Transaction.

97.     Not so.  As discussed, by letter dated December 29, 2021, my attorneys demanded payment of the accelerated principal and balance of each Note, and notified Mr. Porges that I intended to file the 675 COJ if payment was not received by January 3, 2022.  *See* Ex. 13.

**E.     False and Misleading Statements Regarding Fabricated Rent Rolls Submitted in the Collection Action and the COJ Action**

98.     Mr. Porges contends that that I provided fraudulent rent rolls to fraudulently induce him into the New Jersey Transaction.  *See* Ex. 22, ¶8; Ex. 24, ¶9.

99.     To that end, Mr. Porges' counsel in the Collection Action submitted an exhibit that is described in his attorney affirmation as both a "Falsified Rent Roll" and a "[d]ocument Plaintiff provided subsequent to the contract's signing."  *See* Ex. 23, ¶9.

100.    The "Falsified Rent Rolls" offered by Mr. Porges' attorney are attached to this declaration as **Exhibit 27**.[10]

101.    At the outset, I did not provide these or any other rent rolls to Mr. Porges in connection with the New Jersey Transaction.  The notion that I fabricated rent rolls to fraudulently induce him into the New Jersey Transaction is simply false.

102.    What's more, the provenance of these rent rolls is unclear, as they are  undated and unsigned.

103.    However, the document bears the Eastern Union logo.  An informational footer on each page cautions readers that "[t]he data contained herein is based solely on information received from the client . . ."  *See* Ex. 27.

---

[10]  Mr. Porges' counsel is obviously not competent to authenticate this rent roll.  His attorney affirmation cross-references ¶8 in Mr. Porges' affirmation, but ¶8 does not even mention rent rolls; it merely references "Documents provided subsequent to the contract's signing," which only raises more questions about the authenticity of these purported rent tolls.

104.     It thus appears that Mr. Porges is the source of the rent rolls.  Indeed, unlike Mr. Porges, I was never a client of Eastern Union with respect to the New Jersey Properties.

105.     Accordingly, in light of the above, I respectfully ask the Court to appoint a temporary receiver over the New Jersey Properties, to enter an order authorizing expedited discovery, and awarding such other and further relief as may be necessary and proper.

Dated: Brooklyn, New York
       May 3, 2022

*/s/ Abraham Kleinman*
ABRAHAM KLEINMAN