# EXHIBIT 22

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
----------------------------------------------------------------X
ABRAHAM KLEINMAN,

        Plaintiff,

        -against-

CHAIM PORGES,

        Defendant.
----------------------------------------------------------------X

Index No.: 500593/2022

Civil Action

**AFFIRMATION IN OPPOSITION TO ORDER TO SHOW CAUSE**

STATE OF NEW YORK   )
                         ) SS:
COUNTY OF _____ )

        CHAIM PORGES, having duly affirmed, deposes and says under the penalties of perjury:

        1.       I am the Defendant in the above-captioned action.

        2.       I make this Affirmation based upon my personal knowledge, except for those things which I state upon information and belief, and as to those things, I believe them to be true. I affirm, rather than swear, due to my religious beliefs.

        3.       I make this Affirmation in opposition to Plaintiff Abraham Kleinman's (hereinafter "Plaintiff") application, brought by Order to Show Cause, to hold me in contempt for failing to respond to a deposition subpoena, to order my compliance therewith, and to order sanctions related to my alleged noncompliance. I was taken in by a fraudster and con man, Plaintiff, and it has caused great disruption to my and family's life. The Order to Show Cause should be denied.

**The Subject Real Estate Transaction**

        4.       In early October 2020, Plaintiff approached me informing me he had a lucrative business opportunity to offer me: the sale of five buildings in New Jersey, which buildings he claimed were occupied by tenants.

5.  I expressed interest in this deal and requested further information. Plaintiff was largely noncommittal in response to these requests, but he constantly reiterated what a good deal this opportunity was.

6.  I requested that Plaintiff send my attorney, Jason Rebhun, Esq., a contract to review so that we could assess the viability of such a purchase. Immediately upon provision of such a contract, Plaintiff put tremendous pressure on me to sign almost immediately. The contract was executed only a few weeks after I had been approached about the deal, on or about October 23, 2020.

7.  I was looking to finance the purchase of these buildings with a mortgage and had begun looking for one, but Plaintiff informed me that there was no time to procure one and that I needed to instead close using a hard money loan with a very expensive interest rate of close to ten percent (10%). I was pressured by Plaintiff to wire a $10,000 deposit to the lender to start the process of obtaining the hard money, high-cost loan.

8.  Although frustrated by the process by which Plaintiff was pushing this transaction through, I was convinced by his representations, which ultimately turned out to be false, that the value was there for it to be a lucrative deal for me. Documents Plaintiff provided subsequent to the contract's signing appeared to show that the buildings were fully tenanted and occupied and provided monthly rental revenue in excess of $31,000. But for these representations, I would not have entered into the contract and/or I would have canceled the contract in due diligence.

9.  In the middle of November, during the contractually afforded due diligence period, I informed Plaintiff I would be inspecting a few of the properties. I told Plaintiff which buildings I would be going to.

10. When I arrived at the properties, it had been arranged that no one was available to let me into numerous locked units at those properties. Although a few tenants allowed me to look at their units, besides for common areas, I was largely unable to inspect the properties due to Plaintiff's failure to accommodate my right to do so. I believe that once I informed Plaintiff I would be inspecting the premises, he arranged it such that nobody would be there to permit me access.

11. At numerous points subsequent to signing the contract, Plaintiff threatened to back out of and to sabotage our deal, though he never stated what his legal basis for doing so would be.

12. The closing was fully consummated in the late morning or early afternoon of Friday, January 15, 2021. Plaintiff was aware of this. Upon information and belief, Plaintiff is an experienced buyer and seller of real estate.

13. Plaintiff, I, and our respective attorneys are all Orthodox Jews. As such, we cease to perform any work — including business deals and any usage of electronic forms of communication — prior to the onset of the Sabbath on Friday evening. There is also significant preparation for the Sabbath which must be completed prior to the Sabbath each week.

14. Sabbath on January 15, 2021 started at approximately 4:35 PM.

15. Plaintiff called me approximately two hours before the Sabbath informing me that I needed to meet him that afternoon at a notary to sign important documents. According to Plaintiff, these were documents that had not been signed at closing and that had not been circulated to my attorney, Jason Rebhun, Esq., for review.

16. I responded to Plaintiff that I wanted time to have my attorney review those documents. I offered to sign them the following Sunday.

17. Plaintiff refused my reasonable request, informing me that he would cancel the deal if I did not come and sign the papers that day.

18. Believing and relying upon Plaintiff's representation that he would cancel the deal if I did not sign these documents, and only because I believed that representation, I rushed over to meet Plaintiff at a notary's house. I signed the documents presented to me, which I later learned were the Note and Confession of Judgment which were filed in this action.

19. Before I signed them, Plaintiff represented to me that he would send the documents to my attorney for review after I signed them. However, Plaintiff never followed through on this, and I have now come to learn that my attorney Mr. Rebhun did not see and was not aware of the documents. Upon information and belief, Plaintiff intended never to send those documents to my attorney and instead said whatever he felt he needed to in order to induce me into signing the documents.

20. Yiddish is my first language. Because English is not my first language, and I rely on my attorney to explain to me both the content and the import of legal documents, I did not understand the content of the documents that I was signing.

21. I subsequently learned that Plaintiff's representation that he would cancel the deal if I did not sign the documents was knowingly false; in fact, the closing had already occurred when he made his representation.

22. Plaintiff made other significant misrepresentations to me regarding this deal. Although he had represented to me and to the lenders that the buildings were fully occupied, it turned out that only approximately twelve (12) of the twenty-eight (28) residentials units were occupied; of those 12, only about half were actually paying their rent.

23. Likewise, it appears Plaintiff purposely did not make the building available to me to inspect during my due diligence period. It turns out that many of the units I was unable to inspect are in various states of disrepair, with holes in the ceilings, walls, and flooring and other issues.

**The Illinois Transaction, a Similar Scheme**

24. Before I was able to understand the extent of Plaintiff's bad faith and lies, we entered into contract on two other deals. In the context of one of those deals, regarding properties in Illinois (hereinafter the "Illinois Transaction"), it became clear that his attorneys, Mark J. Nussbaum & Associates PLLC (who were also Plaintiff's transactional attorneys with respect to the contract, Note, and Confession of Judgment at issue in the instant action), were in cahoots with him in preparing legal documents which were intended to be signed by me without my attorney's knowledge and counsel in connection with these deals.

25. Plaintiff and I, through our respective counsel, were prepared to close on the Illinois Transaction on March 11, 2021. The night before, on March 10, 2021, I and my business partner were summoned by Plaintiff, with no advance warning and without notice to my attorney, to the offices of Mark J. Nussbaum & Associates PLLC. Just as in the instant case, Plaintiff there too represented that the failure to sign these documents would result in the cancellation of the deal. In those offices, I was again pressured, by a combination of Plaintiff and his attorneys, to sign documents that very moment without an opportunity to have my attorney review them.

26. Under that pressure, I signed the documents, including a Note and Confession of Judgment.

27. Just as in the instant case, the rent information and rent roll provided regarding the Illinois Transaction, which was an inducement to signing the documents, bore no relationship to

the actual state of the properties. In signing the documents Plaintiff and his counsel pressured me to sign with regard to the Illinois Transaction, I relied upon and was induced by the false rent roll.

28.     The next day, prior to closing, my attorney discovered the existence of these documents whose signing had improperly been induced by Plaintiff and Plaintiff's counsel. We also discovered that the rent roll provided had been falsified. My attorney Mr. Rebhun immediately contacted Plaintiff's counsel about the unacceptable behavior of Plaintiff's counsel in facilitating, aiding, and abetting Plaintiff's scheme, which included clear misrepresentations regarding the rent roll in the Illinois Transaction. Plaintiff's counsel even agreed, when confronted, that the Note and Confession of Judgment signed outside my attorney's presence were void and of no effect. My counsel had me sign a document which outlined this series of events and which was presented to Plaintiff's counsel.

**Efforts to Enforce the Judgment and the Extortion Plot**

29.     Not being aware that I had been forced to sign a Confession of Judgment and the documents not having been given to my attorney, I was blindsided when Judgment was entered against me without notice in the instant action.

30.     A mere few days after Judgment was entered against me, I was contacted by someone identifying himself as "Joel Herman," who informed me that he specializes in removing judgments. He informed me that he only seeks payment if he is successful, so I told him that I was unsure about the reason for the Judgment but that I would use his services.

31.     Two days later, Mr. Herman contacted me to tell me that an unspecified New York District Attorney was looking into my case already and that he had learned that that District Attorney would be sending my file to the authorities from New Jersey and the FBI soon thereafter. In light of that, Mr. Herman stated, he would require my payment to him of $15,000 cash

immediately, in which case he would somehow ensure the Judgment was removed before the file was transferred to New Jersey and the FBI.

32. The man who called himself Mr. Herman did not explain how he had learned this or how the payment of $15,000 would resolve the Judgment. He certainly did not explain how he, or indeed the "removal" of the Judgment, could stop the unnamed District Attorney from transferring my file (whatever that is) to another State or to the Federal Bureau of Investigation.

33. This sequence of events, especially as it came after the conclusion of the business dealings with Plaintiff and very shortly after what I learned was entry of the Judgment by Confession, was starting to sound more and more farfetched to me. I refused Mr. Herman's demand to make such a payment.

34. A week later, I started to receive purported phone calls from the "FBI," which were obviously fraudulent. Whoever was calling appears to have used phone-spoofing technology to display the name "FBI" on the caller ID, and I do not at all believe the Federal Bureau of Investigation was attempting to contact me. They have not done so in person or by other means.

35. It must be noted that I am a family man and a father of eight (8) children. Before I began the business dealings with Plaintiff discussed in this Affirmation, nothing like what has been described here had ever happened to me. I was duped by the more sophisticated Plaintiff, who took advantage of my good nature and my lack of understanding of English.

36. Upon further inquiry, I discovered that Mr. Herman is an associate of Plaintiff's. Upon information and belief, they conspired to extort me for money using the fraudulently obtained Judgment as leverage and by having people impersonate federal agents to scare me.

37. Plaintiff's tactics, schemes, and conspiracies are illegal and abhorrent. Like in the Illinois Transaction, Plaintiff fraudulently induced me into signing the Note and Confession of

Judgment which are the subject of this action. These things were done without giving me an opportunity to consult, by using pressure tactics to avoid my attorney's scrutiny of their claims and tactics, and while understanding that I would be at a severe disadvantage because of their threats to kill deals I had already invested in and their significant advantage over me in English skills.

38. Unlike the Illinois Transaction (which occurred subsequent to the subject transaction), however, my attorney did not get an opportunity to object and have me withdraw and nullify the Note and Confession of Judgment I had signed. This is because Plaintiff breached his false promise to me that he would be sending within a day or two the documents I had signed to my attorney for review.

39. Furthermore, the business deal in the context of which those documents were signed was rife with material misrepresentations made by Plaintiff. Consequently, I respectfully request that this Court decline to enforce the subpoenas issued pursuant to the Judgment entered in this action, which was fraudulently obtained by Plaintiff.

40. I am presently preparing a plenary action to vacate the Judgment entered upon my confession that was fraudulently obtained. I respectfully beseech this Court to seek out and let justice rule out in this instance. The Court must see the con man Plaintiff Kleinman for what he is.

**WHEREFORE**, I respectfully request that the Court deny Plaintiff's application in its entirety, together with such other and further relief as this Honorable Court deems just and proper.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

_____
Chaim Porges

STATE OF NEW YORK )
) SS:
COUNTY OF __KINGS__ )

On the 1st day of April, 2022, before me, the undersigned, personally appeared Chaim Porges, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned.

_____
Notary Public

PADRAM FEJAL
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01FE6305764
Qualified in Kings County
Commission Expires 06/09/2022