# EXHIBIT 23

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------X
ABRAHAM KLEINMAN,

        Plaintiff,

      -against-

CHAIM PORGES,

        Defendant.
-------------------------------------------------------------------X

Index No.: 500593/2022

Civil Action

**ATTORNEY AFFIRMATION IN OPPOSITION TO ORDER TO SHOW CAUSE**

      JEREMY M. DOBERMAN, an attorney duly admitted to practice law before the Courts of the State of New York, hereby affirms, under the penalties of perjury, the following to be true:

**PRELIMINARY STATEMENT**

      1.    I am associated with the Law Firm of Marc Wohlgemuth & Associates P.C., attorneys for CHAIM PORGES (hereinafter "Defendant"), the defendant in the above-captioned action, and as such, I am familiar with the facts and circumstances surrounding this case, based upon my personal knowledge, due inquiry, and the files maintained at this office.

      2.    I submit this Affirmation in opposition to Plaintiff ABRAHAM KLEINMAN's (hereinafter "Plaintiff") Order to Show Cause, which seeks an Order (i) directing compliance of Defendant and various non-parties with subpoenas issued pursuant to a Judgment by Confession entered on January 10, 2022; (ii) sanctioning and holding Defendant in contempt for his noncompliance with subpoenas issued by Plaintiff in a recent attempt to enforce the Judgment entered by Confession; and (iii) such other and further relief as to this Honorable Court may deem just and proper.

      3.    This action was commenced by the filing against Defendant of a Confession of Judgment, dated January 15, 2021 (hereinafter the "Confession of Judgment"). No notice of the

1

proceedings was given to Defendant. Judgment was entered in the Office of the County Clerk on January 10, 2022 (hereinafter the "Judgement").

4. As is demonstrated herein, the Confession of Judgment was obtained via fraudulent inducement and by denying Defendant the right to consult with his counsel. Consequently, the Judgment should not be enforced, and Defendant and all non-parties should not be held in contempt, sanctioned, or forced to comply with any subpoenas issued pursuant to the Judgment.[1]

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

5. In early October 2020, Plaintiff approached Defendant informing him he had a lucrative business opportunity to offer Defendant: the sale of five buildings in New Jersey (hereinafter the "Properties"), which Properties Plaintiff claimed were occupied by tenants. See Def.'s Aff., ¶ 4.

6. Defendant expressed interest in this deal and requested further information. Plaintiff was largely noncommittal in response to these requests, but he constantly reiterated what a good deal this opportunity was. See Def.'s Aff., ¶ 5.

7. Defendant requested that Plaintiff send Defendant's transactional attorney a contract to review so that we could assess the viability of such a purchase. Upon provision of such a contract, Plaintiff put tremendous pressure on Defendant to sign almost immediately. The contract for the purchase of the Properties (hereinafter the "Contract") was executed only a few weeks after Defendant had been approached about the deal, on or about October 23, 2020. See Def.'s Aff., ¶ 6; Contract for Sale of Properties, annexed hereto as **Exhibit A**.

---

[1] Defendant is at this very moment preparing a plenary action, which will be commenced by Complaint and Order to Show Cause, in order to vacate the Judgment that was fraudulently obtained and entered upon Defendant's confession. That action will be commenced within days.

2

8. Defendant was looking to finance the purchase of these buildings with a mortgage and had begun looking for one, but Plaintiff informed him that there was no time to procure one and that Defendant needed to instead close using a hard money loan with a very expensive interest rate of close to ten percent (10%). Defendant was pressured by Plaintiff to wire a $10,000 deposit to the lender to start the process of obtaining the hard money, high-cost loan. See Def.'s Aff., ¶ 7.

9. Although frustrated by the process by which Plaintiff was pushing this transaction through, Defendant was convinced by his representations, which ultimately turned out to be false, that the value was there for it to be a lucrative deal for him. Documents Plaintiff provided subsequent to the contract's signing, pursuant to one of the Contract's clauses which required this, see Ex. A, Contract Rider, § 28(h), appeared to show that the buildings were fully tenanted and occupied and provided monthly rental revenue in excess of $31,000. See Def.'s Aff., ¶ 8; Properties' Falsified Rent Roll, annexed hereto as **Exhibit B**.

10. During the due diligence period Defendant was contractually entitled to, see Ex. A, § 6, Defendant was denied access to most of the units at the Properties despite informing Plaintiff in advance of his intent to inspect the Properties. See Def.'s Aff., ¶ 9–10.

11. Following due diligence, the parties agreed to reduce the purchase price of the Contract to $2.5 million. See Amendment to Contract dated December 22, 2020, annexed hereto as **Exhibit D**.

12. The closing on the Properties occurred in the morning or early afternoon of Friday, January 15, 2021. Plaintiff was aware of the closing. See Def.'s Aff., ¶ 12.

13. Plaintiff, Defendant, and their respective transactional attorneys are all Orthodox Jews who cease to perform any work — including business deals and any usage of electronic forms of communication — prior to the onset of the Sabbath on Friday evening. See Def.'s Aff., ¶ 13.

3

14. On the Friday of the closing, the Sabbath began at approximately 4:35 PM. See Def.'s Aff., ¶ 14. This was one of the earliest starting times for the Sabbath that year, and significant preparation needed to be done prior to the Sabbath, which is a busy time. Id.

15. Approximately two hours before the Sabbath, Plaintiff called Defendant informing him that Defendant needed to meet him that afternoon at a notary to sign important documents. According to Plaintiff, these were documents that had not been signed at closing and that had not been, and could not wait to be, circulated to Defendant's attorney, Jason Rebhun, Esq., for review. See Def.'s Aff., ¶ 15.

16. Defendant requested if this could wait until Sunday to allow his attorney time to review the documents, but Plaintiff refused and threatened to cancel the deal if Defendant did not go and sign them that day. See Def.'s Aff., ¶ 16–17.

17. Believing what turned out to be a false threat by Plaintiff, see Def.'s Aff., ¶ 21, Defendant went and executed the documents which were presented to him outside of the context of the closing, the Note and Confession of Judgment. See Def.'s Aff., ¶ 18.

18. Plaintiff further represented that he would send these documents to Defendant's attorney after the Sabbath, which Defendant relied upon in signing those documents, but Plaintiff never did so. See Def.'s Aff., ¶ 19.

19. Defendant's counsel was totally unaware that these documents had been signed, or even that Plaintiff would be seeking the funds represented by the Note and Confession of Judgment. See Rebhun Aff., ¶¶ 5-10.

20. In fact, the amounts allegedly owed pursuant to the Note and Confession, which Plaintiff now claims were part of the purchase price for the Properties, see Pl.'s Atty.'s Aff., ¶ 4,

4

do not appear in any of the closing statements, nor was it ever represented to Defendant's counsel that those amounts were owed. See Rebhun Aff., ¶¶ 5-10.

21. In fact, the closing statements from the closing do not reflect any additional consideration given beyond the purchase price, and they certainly do not reflect Six Hundred Seventy-Five Thousand Dollars ($675,000) of additional consideration. See Closing Statements from the subject closing, annexed hereto as **Exhibit E**.

22. English is not Defendant's first language, and he did not understand the content or significance of the documents he was rushed and pressured into signing on pain of losing the deal into which he had invested so much. See Def.'s Aff., ¶ 20; Rebhun Aff., ¶ 20.

23. Subsequent to the closing, Defendant learned that Plaintiff's representation, made subsequent to the execution of the Contract, that the Properties were fully occupied, was false. See Ex. A, Contract Rider, § 28(h); Ex. B.

24. In fact, Plaintiff's representations regarding the rent information and rent rolls were so false that Plaintiff had clearly falsified the rent rolls, misrepresenting that all of the Properties were tenanted and occupied whereas in actuality less than half of the units at the Properties were tenanted and only around half of those occupied were paying rent. See Def.'s Aff., ¶ 22.

25. Likewise, it appears Plaintiff purposely did not make the building available to Defendant to inspect during his due diligence period. It turns out that many of the units Defendant was unable to inspect were in various states of disrepair, with holes in the ceilings, walls, and flooring and other issues. See Def.'s Aff., ¶ 23; Photos from the Properties, annexed hereto as **Exhibit C**.

26. In the context of a different business transaction between the parties that occurred around the same time regarding property in Illinois (hereinafter the "Illinois Transaction"), it

5

became apparent that Plaintiff's attorneys, Mark J. Nussbaum & Associates PLLC, were facilitating Plaintiff's communications and Defendant's execution of legal documents in circumvention of Defendant's counsel. See Def.'s Aff., ¶ 24.

27. The night before the Illinois Transaction closed, Plaintiff again pressured and coerced Defendant into signing a note and confession of judgment outside of his counsel's presence and without his counsel's knowledge, this time at <u>the offices of Mark J. Nussbaum & Associates PLLC</u>. See Def.'s Aff., ¶ 25–26; Rebhun Aff., ¶ 16.

28. The morning of the closing of the Illinois Transaction, Defendant's attorney Mr. Rebhun discovered the existence of the documents improperly procured by Plaintiff and Plintiff's counsel the night before, and that the rent roll Plaintiff had produced to induce Defendant's signatures was materially inaccurate. Defendant's attorney immediately contacted Plaintiff's counsel to lodge his objection to those improperly procured documents, which Plaintiff's counsel conceded were void upon confrontation by Defendant's counsel. See Def.'s Aff., ¶ 28; Rebhun Aff., ¶ 17.

29. On January 4, 2022, Plaintiff commenced this action by filing the Confession of Judgment (which is Defendant's Affirmation given late that Friday in January 2021), an Affirmation in support, the Note, and a proposed judgment. See NYSCEF Docket printout, annexed hereto as **Exhibit F**.

30. However, as one can see, the Confession of Judgment was rejected and not "corrected" until two (2) days later. See Id.

31. But the Confession of Judgment was a document that should not have changed at all in content after it was signed by Defendant.

6

32.     In actuality, upon information and belief, Plaintiff and/or his then-attorney, Efraim Lipschutz, falsified the Confession of Judgment by crossing out the actual county in which it was intended to be filed, New York County, and hand-writing in Kings County. See the apparently falsified Confession of Judgment as filed as "CORRECTED" on NYSCEF, annexed hereto as **Exhibit G**.

33.     This alteration is not merely non-substantive because the law requires that the affidavit of confession recite the County in which the defendant resides, and the subject Confession of Judgment does not specify a particular county or address of residence of Defendant and instead references "the address set forth both in the caption and below." But there was no address set forth below, and the county in the caption appears to have been changed subsequent to its signing.

34.     As the Court can plainly see, this Judgment obtained by confession was improperly obtained in so many ways. It must be vacated, and at the very least it should not be enforced until the outcome of the forthcoming proceeding to vacate it is resolved.

## ARGUMENT

### I.   THIS COURT SHOULD NOT PERMIT ENFORCEMENT OF THE JUDGMENT BECAUSE THE SUPPOSED CONFESSION OF JUDGMENT IS INVALID ON ITS FACE AND APPEARS TO HAVE BEEN FALSIFIED

35.     C.P.L.R. § 3218(a) dictates the statutory requirements for what must be included for an affidavit of confession of judgment. Included among those requirements is that the affidavit must "stat[e] the county where the defendant resides." C.P.L.R. § 3218(a)(1).

36.     The Second Department has reversed lower courts which have denied motions to set aside and vacate judgments entered by confession where, regarding the affidavit of confession of judgment, there were questions "whether it complied with CPLR 3218." Ripoll v. Rodriguez, 53 A.D.2d 638, 638 (2nd Dep't 1976); see also Corrales v. Walker, 20 Misc. 3d 285, 289 (Dist. Ct. Nassau Cty. 2008) ("[I]t is clear that the affidavit executed by the defendant does not conform with

7

CPLR 3218 (a)…and is void as a matter of law since the affidavit does not state (1) the county in which the defendant resides.").

37. It is well established that "[t]he right to enter judgment, based upon a statement of confession, is derived from the statute and is <u>dependent upon strict compliance with the pertinent statutory provisions</u>." <u>Cty. Nat'l Bank v. Vogt</u>, 28 A.D.2d 793, 794 (3rd Dep't 1967), aff'd 21 N.Y.2d 800 (N.Y. 1968) (emphasis added).

**<u>The Confession Is Void Because It Fails to Specify the County of Defendant's Residence</u>**

38. The Confession of Judgment in the instant action is void as invalid on its face. The Confession of Judgment is internally contradictory as to the purported county where Defendant resides.

39. The proffered Confession of Judgment states that the Defendant "reside[s] at the address set forth both in the caption and below." Ex. G, ¶ 1. As an initial matter, no address is listed anywhere in the Confession of Judgment.

40. And regarding the county listed in the affirmation, the affirmation alternates between listing the county as New York County and Kings County. Immediately above the caption is printed "COUNTY OF NEW YORK." However, "New York" is crossed out, without any indication for when this alteration happened, and "KINGS" is handwritten next to it. Immediately below the caption, the affirmation states "STATE OF NEW YORK, COUNTY OF NEW YORK." At the bottom of the affirmation, the affirmation states "Kings County, New York." Ex. G.

41. Furthermore, because there is no indication when the alteration to the caption was made, it was improper for the judgment to be entered in Kings County where the caption, as printed, plainly reads New York County. See <u>Irons v. Roberts</u>, 206 A.D.2d 683, 684 (3rd Dep't 1994) ("Notably, CPLR 3218 (b) authorizes entry of the judgment only in the county

8

designated in the debtor's affidavit, and entry of the judgment in an unauthorized county renders it void.").

42. Crucially, to the extent that there is **any** ambiguity regarding whether the Confession of Judgment was invalid, that ambiguity must be resolved **in favor of Defendant**. Id. ("In assessing a judgment by confession, a liberal attitude should be assumed in favor of the judgment obligor."); Ripoll, 53 A.D.2d, at 638 ("Confessions of judgment are always carefully scrutinized and, in judging them, a liberal attitude should be assumed in favor of judgment debtor.").

43. Where "strict compliance with the pertinent statutory provisions" is necessary to enforce a confession of judgment, Judgment should never have been entered pursuant to this internally inconsistent Confession of Judgment. Vogt, 28 A.D.2d, at 794. As such, this Court should not enforce any subpoenas, impose sanctions, or hold Defendant in contempt, pursuant to the Judgment.

**The Available Evidence Shows That Plaintiff and/or Plaintiff's Counsel Falsified the Affirmation of Confession of Judgment by Altering It**

44. More distressingly, however, the available evidence shows that Plaintiff and/or Plaintiff's counsel falsified the Confession of Judgment by altering it and offering the altered version upon which for the Court to enter Judgment by Confession.

45. Specifically, the evidence shows that the Confession of Judgment was initially rejected by the Clerk's Office on January 4, 2022. See Ex. F.

46. It was only two days later, on January 6, 2022, that Plaintiff finally filed the "CORRECTED" version of that affirmation of Confession of Judgment. See Ex. F.

9

47. However, the only alteration that appears on the face of the document now available on the NYSCEF docket as Doc. No. 1 is the cross-out of the County name and the handwritten "KINGS" referenced above.

48. As noted *supra*, this is not merely a clerical change with no substance to it. Instead, it is substantive change to the document, given that (a) the county of Defendant's residence is a required element for a valid confession of judgment; (b) the Defendant actually resides in Kings County; (c) the affirmation of confession does not contain a specified address or county of residence; and (d) the affirmation of confession instead points back to the "address set forth in the caption."

49. The alteration of the County in the caption, thus, is the only means by which Plaintiff could even claim to have an enforceable Confession of Judgment.

50. However, Plaintiff cannot alter the document ex post facto by changing the "county of residence of Defendant" because an affidavit cannot be altered after it is signed by the affiant.

51. In fact, offering the same appears to be an act of offering a false instrument to the Clerk of this Court, which act may constitute forgery. See Penal Law § 170.00 *et seq*.

52. Because the available evidence indicates that the Confession of Judgment offered to the Clerk and upon which the Clerk entered Judgment by Confession was materially altered by Plaintiff and/or his counsel, the Judgment should be vacated and certainly not enforced through contempt, sanctions, and related relief.

**II.    THIS COURT SHOULD NOT PERMIT ENFORCEMENT OF THE JUDGMENT BECAUSE THE CONFESSION OF JUDGMENT WAS OBTAINED BY FRAUDULENT INDUCEMENT**

53. Assuming, *arguendo*, that this Court doesn't find that the Judgment is unenforceable because the Confession of Judgment was invalid on its face and/or was actually a

10

forged instrument, this Court should not enforce the Judgment because it was procured by fraudulent inducement.

54. "To sustain a claim for fraudulent inducement, there must be a knowing misrepresentation of material fact, which is intended to deceive another party and to induce them to act upon it, causing injury." Sokolow v. Lacher, 299 A.D.2d 64, 70 (1st Dep't 2002).

55. Plaintiff's threat that he would cancel the deal if Defendant did not sign the Note and Confession of Judgment was a misrepresentation, considering the deal had already closed; this misrepresentation was either knowingly false or made with a reckless disregard for its truth. See Bank of N.Y. v. Realty Grp. Consultants, 186 A.D.2d 618, 618-19 (2nd Dep't 1992) ("[T]o succeed on a claim of fraud, a party must demonstrate that a false representation was made which was known to be untrue or which was made with reckless disregard of the truth.").

56. Furthermore, Plaintiff falsely represented he would send the documents to Defendant's counsel; this representation was knowingly false when made, as revealing those documents to Defendant's attorney would have led to those documents being disavowed, as occurred in the context of the Illinois Transaction.

57. Plaintiff made his threat, and the promise to send the documents to Defendant's attorney after the Sabbath, specifically in response to Defendant's request to sign the documents at a later time and to show his attorney the documents Plaintiff wanted him to sign. That Plaintiff's intent was to induce reliance on his misrepresentation is beyond peradventure, establishing another element of fraudulent inducement.

58. Defendant, under significant pressure and duress in signing the Note and Confession of Judgment, relied on Plaintiff's misrepresentations (1) that he would cancel the deal and (2) that he would give copies of the documents to Defendant's counsel after the Sabbath.

11

59. Defendant was injured in signing a Note and Confession of Judgment for funds that were never advanced by Plaintiff and that were never actually owed to Plaintiff. Had those funds actually been owed by Defendant, the closing could not have occurred without those documents being furnished to the title company, other lenders, and Defendant's counsel, and they would have been reflected on the settlement statements.

60. Defendant was further fraudulently induced into closing on the purchase of the Properties based on Plaintiff's misrepresentation of the rent rolls of the Properties, which misrepresentation was made both before and after the signing of the Contract.

61. Plaintiff could not possibly have been unaware of the significant discrepancy between the amounts he represented were being collected in rent and the amounts he actually received. Even if, *arguendo*, he were not aware, then his representations were made with reckless indifference as to the truth of those representations.

62. Such misrepresentations were made with the intent to induce Plaintiff into closing on the deal. Plaintiff, who closed on the deal and ended up with Properties that were much less lucrative than Plaintiff told Defendant they were and would be, caused significant damages.

63. Where a party fraudulently induces another to enter into an agreement, rescission is appropriate. See Sokolow v. Lacher, 299 A.D.2d 64, 70 (1st Dep't 2002) ("These allegations state a viable claim for rescinding the Agreement based on fraudulent inducement.").

64. This is all the more so appropriate where an agreement procured by fraud is executed by someone who could not understand the content of the agreement and did not have the opportunity to find someone to read it to him. See Shklovskiy v. Khan, 273 A.D.2d 371, 372 (2nd Dep't 2000) (recognizing that, where an agreement is procured by fraud against a party who

12

could not understand, it is only "[a] party who signs a document without any valid excuse for having failed to read [tha]t is conclusively bound by its terms").

65. Defendant, unable to understand the documents he was signing on his own and without the assistance of his counsel who helped him with the rest of the transaction, did not have an opportunity to find someone else to read them for him due to Plaintiff's acute pressure tactics. Plaintiff imposed an artificial deadline on Defendant's execution of the Note and Confession of Judgment, knowing that Defendant would not be able to find someone to explain the documents to him so close to the Sabbath and that Defendant would respond to the threat to cancel the deal and thereby lose what he had contributed.

66. Equity requires the rescission and/or vacatur of the Confession of Judgment and Note, which were not signed in connection with any *bona fide* indebtedness of the Defendant. The suggestion that it was related to the underlying transaction to close on the Contract, as amended, is belied by the fact that it was never delivered to the numerous entities taking part in the closing on the Contract. Rather, Plaintiff caused Defendant to sign those documents under duress, through fraudulent inducement, to evidence a solely on-paper debt that existed only in Plaintiff's mind, and the same should be disregarded.

**WHEREFORE**, your Affirmant prays for an Order denying all relief sought in the instant Order to Show Cause, and for such other and further relief as to the Court may seem just, equitable, and proper.

13

Dated: April 1, 2022
      Monsey, New York

                              Marc Wohlgemuth & Associates P.C.

                              */s/Jeremy M. Doberman*

                              By:    Jeremy M. Doberman, Esq.
                              *Attorneys for Defendant*
                              21 Remsen Avenue
                              Monsey, New York 10952
                              845-746-2700