# EXHIBIT 24

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------X
CHAIM PORGES,

        Plaintiff,

-against-

ABRAHAM KLEINMAN,

        Defendant.
-------------------------------------------------------------------X

Index No.:

Civil Action

**AFFIRMATION IN OPPOSITION TO ORDER TO SHOW CAUSE**

STATE OF NEW YORK    )
                               ) SS:
COUNTY OF _____  )

        CHAIM PORGES, having duly affirmed, deposes and says under the penalties of perjury:

        1.        I am the Plaintiff in the above-captioned action.

        2.        I make this Affirmation based upon my personal knowledge, except for those things which I state upon information and belief, and as to those things, I believe them to be true. I affirm, rather than swear, due to my religious beliefs.

        3.        I make this Affirmation in support of my Order to Show Cause, which seeks an Order (i) vacating the Judgment entered by the Kings County Clerk on January 10, 2022, purportedly upon Plaintiff's confession, in favor of Defendant Abraham Kleinman (hereinafter "Defendant") in the amount of $708,750.00; (ii) quashing all subpoenas served by Defendant in enforcement of the aforementioned Judgment entered by confession and directing Defendant to turn over all material obtained by him pursuant to these subpoenas and to delete any copies he may still retain; (iii) staying all enforcement of the aforementioned Judgment; and (iv) such other and further relief as to this Honorable Court may deem just and proper.

4. I was taken in by a fraudster and con man, Defendant, and it has caused great disruption to my and my family's lives.

**The Subject Real Estate Transaction**

5. In early October 2020, Defendant approached me informing me he had a lucrative business opportunity to offer me: the sale of five buildings in New Jersey, which buildings he claimed were occupied by tenants.

6. I expressed interest in this deal and requested further information. Defendant was largely noncommittal in response to these requests, but he constantly reiterated what a good deal this opportunity was.

7. I requested that Defendant send my attorney, Jason Rebhun, Esq., a contract to review so that we could assess the viability of such a purchase. Immediately upon provision of such a contract, Defendant put tremendous pressure on me to sign almost immediately. The contract was executed only a few weeks after I had been approached about the deal, on or about October 23, 2020.

8. I was looking to finance the purchase of these buildings with a mortgage and had begun looking for one, but Defendant informed me that there was no time to procure one and that I needed to instead close using a hard money loan with a very expensive interest rate of close to ten percent (10%). I was pressured by Defendant to wire a $10,000 deposit to the lender to start the process of obtaining the hard money, high-cost loan.

9. Although frustrated by the process by which Defendant was pushing this transaction through, I was convinced by his representations, which ultimately turned out to be false, that the value was there for it to be a lucrative deal for me. Documents Defendant provided subsequent to the contract's signing appeared to show that the buildings were fully tenanted and

occupied and provided monthly rental revenue in excess of $31,000. But for these representations, I would not have entered into the contract and/or I would have canceled the contract in due diligence.

10. In the middle of November, during the contractually afforded due diligence period, I informed Defendant I would be inspecting a few of the properties. I told Defendant which buildings I would be going to.

11. When I arrived at the properties, it had been arranged that no one was available to let me into numerous locked units at those properties. Although a few tenants allowed me to look at their units, besides for common areas, I was largely unable to inspect the properties due to Defendant's failure to accommodate my right to do so. I believe that once I informed Defendant I would be inspecting the premises, he arranged it such that nobody would be there to permit me access.

12. At numerous points subsequent to signing the contract, Defendant threatened to back out of or to sabotage our deal, though he never stated what his legal basis for doing so would be.

13. The closing was fully consummated in the late morning or early afternoon of Friday, January 15, 2021. Defendant was aware of this. Upon information and belief, Defendant is an experienced buyer and seller of real estate.

14. Defendant, I, and our respective attorneys are all Orthodox Jews. As such, we cease to perform any work — including business deals and any usage of electronic forms of communication — prior to the onset of the Sabbath on Friday evening. There is also significant preparation for the Sabbath which must be completed prior to the Sabbath each week.

15. Sabbath on January 15, 2021 started at approximately 4:35 PM.

16. Defendant called me approximately two hours before the Sabbath informing me that I needed to meet him that afternoon at a notary to sign important documents. According to Defendant, these were documents that had not been signed at closing and that had not been circulated to my attorney, Jason Rebhun, Esq., for review.

17. I responded to Defendant that I wanted time to have my attorney review those documents. I offered to sign them the following Sunday.

18. Defendant refused my reasonable request, informing me that he would cancel the deal if I did not come and sign the papers that day.

19. Believing and relying upon Defendant's representation that he would cancel the deal if I did not sign these documents, and only because I believed that representation, I rushed over to meet Defendant at a notary's house. I signed the documents presented to me, which I later learned were the Note and the form of the Confession of Judgment filed in the action entitled Kleinman v. Porges, Index No. 500593/2022. Court records indicate that was not a plenary action, but that it was instead an index number purchase to enter my Confession of Judgment in order to obtain a judgment against me without notice. Crucially, the entire episode of visiting the notary at his house to sign the documents took all of about two (2) minutes; I made no alterations, nor was I given the time to do so or to even read the documents, due to Defendant's pressuring me.

20. Before I signed the Note and Confession of Judgment, Defendant represented to me that he would send the documents to my attorney for review after I signed them. However, Defendant never followed through on this, and I have now come to learn that my attorney Mr. Rebhun did not see and was not aware of the documents. Upon information and belief, Defendant intended never to send those documents to my attorney and instead said whatever he felt he needed to in order to induce me into signing the documents.

21. Yiddish is my first language. I studied English through only about 6th grade, and I attended a yeshiva and Rabbinical college at which primary instruction was not in English. Because English is not my first language, I am not well-educated in it, and I rely on my attorney to explain to me both the content and the import of legal documents, I did not understand the content of the documents that I was signing at the notary's house had I even been given a reasonable opportunity to read them (which I was not).

22. I subsequently learned that Defendant's representation that he would cancel the deal if I did not sign the documents was knowingly false; in fact, the closing had already occurred when he made his representation.

23. Defendant made other significant misrepresentations to me regarding this deal. Although he had represented to me and to the lenders that the buildings were fully occupied, it turned out that only approximately twelve (12) of the twenty-eight (28) residentials units were occupied; of those 12, only about half were actually paying their rent.

24. Likewise, it appears Defendant purposely did not make the building available to me to inspect during my due diligence period. It turns out that many of the units I was unable to inspect are in various states of disrepair, with holes in the ceilings, walls, and flooring and other issues. I took pictures documenting the state of disrepair which I produced to my attorney.

**The Illinois Transaction, a Similar Scheme**

25. Before I was able to understand the extent of Defendant's bad faith and lies, we entered into contract on two other deals. In the context of one of those deals, regarding properties in Illinois (hereinafter the "Illinois Transaction"), it became clear that his attorneys, Mark J. Nussbaum & Associates PLLC (who were also Defendant's transactional attorneys with respect to the contract, Note, and Confession of Judgment at issue in the instant action), were in cahoots

with him in preparing legal documents which were intended to be signed by me "outside of closing" and without my attorney's knowledge and counsel in connection with these deals.

26. Defendant and I, through our respective counsel, were prepared to close on the Illinois Transaction on March 11, 2021. The night before, on March 10, 2021, I and my business partner were summoned by Defendant, with no advance warning and without notice to my attorney, to the offices of Mark J. Nussbaum & Associates PLLC. Just as in the instant case, Defendant there too represented that the failure to sign these documents would result in the cancellation of the deal. There was no legal basis for Defendant to make this claim, but given my background and Defendant's assurances, I felt compelled to comply in order to stop the deal from being terminated. In those offices, I was again pressured, by a combination of Defendant and his attorneys, to sign documents that very moment without an opportunity to have my attorney review them.

27. Under that pressure, I signed the documents, including a Note and Confession of Judgment.

28. Just as in the instant case, the rent information and rent roll provided regarding the Illinois Transaction, which was an inducement to signing the documents without which I would not have signed the documents, bore no relationship to the actual state of the properties. In signing the documents Defendant and his counsel pressured me to sign with regard to the Illinois Transaction, I relied upon and was induced by the falsified rent roll and rent information.

29. The next day, prior to closing, my attorney discovered the existence of these documents whose signing had improperly been induced by Defendant and Defendant's counsel. We also discovered that the rent roll and rent information provided had been falsified. My attorney Mr. Rebhun immediately contacted Defendant's counsel about the unacceptable behavior of

Defendant's counsel in facilitating, aiding, and abetting Defendant's scheme, which included clear misrepresentations regarding the rent roll in the Illinois Transaction. Defendant's counsel even agreed, when confronted, that the Note and Confession of Judgment signed outside my attorney's presence were void and of no effect. My counsel had me sign a document which outlined this series of events and which was presented to Defendant's counsel.

**Efforts to Enforce the Judgment and the Extortion Plot**

30. Not being aware that I had been forced to sign a Confession of Judgment and the documents not having been given to my attorney, I was blindsided when Judgment was entered against me without notice in the instant action.

31. I have reviewed the Confession of Judgment filed on the NYSCEF website and found that it is not the document I signed. I made no cross-outs or changes to the Confession of Judgment I signed and was not even given an opportunity to read that document. In actuality, it has been altered at the top, above the caption, to handwrite in "KINGS" next to a cross-out of the words "NEW YORK." For the avoidance of doubt, I state again that I did not make these alterations.

32. A mere few days after Judgment was entered against me, I was contacted by someone identifying himself as "Joel Herman," who informed me that he specializes in removing judgments. He informed me that he only seeks payment if he is successful, so I told him that I was unsure about the reason for the Judgment but that I would use his services.

33. Two days later, Mr. Herman contacted me to tell me that an unspecified New York District Attorney was looking into my case already and that he had learned that that District Attorney would be sending my file to the authorities from New Jersey and the FBI soon thereafter. In light of that, Mr. Herman stated, he would require my payment to him of $15,000 cash

immediately, in which case he would somehow ensure the Judgment was removed before the file was transferred to New Jersey and the FBI.

34. The man who called himself Mr. Herman did not explain how he had learned this information or how the payment of $15,000 would resolve the Judgment. He certainly did not explain how he, or indeed the "removal" of the Judgment, could stop the unnamed District Attorney from transferring my file (whatever that is) to another State or to the Federal Bureau of Investigation. None of the mechanics of this supposed action Mr. Herman was supposed to take were detailed, but he was very clear that he needed the money immediately.

35. This sequence of events, especially as it came after the conclusion of the business dealings with Defendant and very shortly after what I learned was entry of the Judgment by Confession, was starting to sound more and more farfetched to me. I refused Mr. Herman's demand to make such a payment.

36. A week later, I started to receive purported phone calls from the "FBI," which were obviously fraudulent. Whoever was calling appears to have used phone-spoofing technology to display the name "FBI" on the caller ID, and I do not at all believe the Federal Bureau of Investigation was attempting to contact me. They have not done so in person or by other means.

37. It must be noted that I am a family man and a father of eight (8) children. Before I began the business dealings with Defendant discussed in this Affirmation, nothing like what has been described here had ever happened to me. I was duped by the more sophisticated Defendant, who took advantage of my good nature and my lack of understanding of English and lack of education.

38. Upon further inquiry, I discovered that Mr. Herman is an associate of Defendant's. Upon information and belief, they conspired to extort me for money using the fraudulently

obtained Judgment as leverage and by having people impersonate federal agents to scare me. It appears that Defendant even forged (by altering) the Confession of Judgment before it was re-filed with the Clerk after being initially rejected for having the wrong County name included.

39. Defendant's tactics, schemes, and conspiracies are illegal and abhorrent. Like in the Illinois Transaction, Defendant fraudulently induced me into signing the Note and Confession of Judgment which are the subject of this action. These things were done without giving me an opportunity to consult, by using pressure tactics to avoid my attorney's scrutiny of their claims and tactics, and while understanding that I would be at a severe disadvantage because of their threats to kill deals I had already invested in and their significant advantage over me in English skills and education.

40. Defendant's actions have caused me and my family serious damage. They have greatly impacted my ability to do business, and we now have to deal with Defendant hounding us for payment. My companies have bought some properties from Defendant's companies which were in vastly worse condition than he represented to me that they were, but I do not owe any debt to Defendant. For him now to send subpoenas to all of my work associates and take depositions of me and my family members is totally unfair and harmful.

41. Unlike the Illinois Transaction (which occurred subsequent to the subject transaction), however, my attorney did not get an opportunity to object and have me withdraw and nullify the Note and Confession of Judgment I had signed. This is because Defendant breached his false promise to me that he would be sending within a day or two the documents I had signed to my attorney for review.

42. Furthermore, the business deal in the context of which those documents were signed was rife with material misrepresentations made by Defendant. In actuality, the document upon

which the Court entered Judgment was a materially altered document which appears to be a forgery. Consequently, I respectfully request that this Court decline to enforce the subpoenas issued pursuant to the Judgment entered in this action, which was fraudulently obtained by Defendant.

**WHEREFORE**, I respectfully request that the Court deny Defendant's application in its entirety, together with such other and further relief as this Honorable Court deems just and proper.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

_____
Chaim Porges

STATE OF NEW YORK  )
                   ) SS:
COUNTY OF Kings    )

On the 5 day of April, 2022, before me, the undersigned, personally appeared Chaim Porges, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned.

_____
Notary Public

```
Chaim Welter
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01WA6363811
Qualified in Kings County
Commission Expires November 13 20__
```