# EXHIBIT 26

Case 1:22-cv-02566-ALC   Document 22-26   Filed 05/03/22   Page 2 of 20

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------X

CHAIM PORGES,

               Plaintiff,

                  -against-

ABRAHAM KLEINMAN,

               Defendant.

-------------------------------------------------------------------X

Index No.:

Civil Action

**ATTORNEY AFFIRMATION
IN SUPPORT OF
ORDER TO SHOW CAUSE**

JEREMY M. DOBERMAN, an attorney duly admitted to practice law before the Courts of the State of New York, hereby affirms, under the penalties of perjury, the following to be true:

**<u>PRELIMINARY STATEMENT</u>**

1.    I am associated with the Law Firm of Marc Wohlgemuth & Associates P.C., attorneys for CHAIM PORGES (hereinafter "Plaintiff"), the Plaintiff in the above-captioned action, and as such, I am familiar with the facts and circumstances surrounding this case, based upon my personal knowledge, due inquiry, and the files maintained at this office.

2.    I submit this Affirmation in support of Plaintiff's Order to Show Cause, which seeks an Order (i) vacating the Judgment entered by the Kings County Clerk on January 10, 2022, purportedly upon Plaintiff's confession, in favor of Defendant Abraham Kleinman (hereinafter "Defendant") in the amount of $708,750.00; (ii) quashing all subpoenas served by Defendant in enforcement of the aforementioned Judgment entered by confession and directing Defendant to turn over all material obtained by him pursuant to these subpoenas and to delete any copies he may still retain; (iii) staying all enforcement of the aforementioned Judgment; and (iv) such other and further relief as to this Honorable Court may deem just and proper.

1

3.       This action was commenced after Defendant filed a Confession of Judgment dated January 15, 2021 (hereinafter the "Confession of Judgment"), wherein Plaintiff purportedly admitted a debt to Defendant. Judgment was entered by the Kings County Clerk on January 10, 2022 (hereinafter the "Judgment"). Most recently, Defendant has moved extremely aggressively to enforce the Judgment, which, as argued below, must be vacated.

4.       The Confession of Judgment upon which the Clerk entered the Judgment is a **<u>forgery</u>**; it was materially altered, and thereby falsified, after the original document was rejected by the Clerk. For that reason, the Judgment entered pursuant to it should be vacated.

5.       Beyond the aforementioned issue though, the Confession of Judgment fails to meet the statutory requirements for entry of judgment by confession and must be vacated. And as is demonstrated herein, the Confession of Judgment was obtained via fraudulent inducement and by denying Plaintiff the right to consult with his counsel and should be voided on that basis alone. Consequently, the Judgment should not be enforced, and Plaintiff and all non-parties should not be held in contempt, sanctioned, or forced to comply with any subpoenas issued pursuant to the Judgment.

### <u>RELEVANT FACTUAL BACKGROUND AND PROCEDURAL POSTURE</u>

6.       In early October 2020, Defendant approached Plaintiff informing him he had a lucrative business opportunity to offer Plaintiff: the sale of five buildings in New Jersey (hereinafter the "Properties"), which Properties Defendant claimed were occupied by tenants. <u>See</u> Pl.'s Aff., ¶ 4.

7.       Plaintiff expressed interest in this deal and requested further information. Defendant was largely noncommittal in response to these requests, but he constantly reiterated what a good deal this opportunity was. <u>See</u> Pl.'s Aff., ¶ 6.

Case 1:22-cv-02566-ALC   Document 22-26   Filed 05/03/22   Page 4 of 20

8.      Plaintiff requested that Defendant send Plaintiff's transactional attorney a contract to review so that he could assess the viability of such a purchase. Upon provision of such a contract, Defendant put tremendous pressure on Plaintiff to sign almost immediately. The contract for the purchase of the Properties (hereinafter the "Contract") was executed only a few weeks after Plaintiff had been approached about the deal, on or about October 23, 2020. See Pl.'s Aff., ¶ 7; Contract for Sale of Properties, annexed hereto as **Exhibit A**.

9.      Plaintiff was looking to finance the purchase of these buildings with a mortgage and had begun looking for one, but Defendant informed him that there was no time to procure one and that Plaintiff needed to instead close using a hard money loan with a very expensive interest rate of close to ten percent (10%). Plaintiff was pressured by Defendant to wire a $10,000 deposit to the lender to start the process of obtaining the hard money, high-cost loan. See Pl.'s Aff., ¶ 8.

10.     Although frustrated by the process by which Defendant was pushing this transaction through, Plaintiff was convinced by Defendant's representations, which ultimately turned out to be false, that the value was there for it to be a lucrative deal for him. Documents Defendant provided subsequent to the contract's signing, pursuant to one of the Contract's clauses which required this, see Ex. A, Contract Rider, § 28(h), appeared to show that the buildings were fully tenanted and occupied and provided monthly rental revenue in excess of $31,000. See Pl.'s Aff., ¶ 9; Properties' Falsified Rent Roll, annexed hereto as **Exhibit B**.

11.     During the due diligence period Plaintiff was contractually entitled to, see Ex. A, § 6, Plaintiff was denied access to most of the units at the Properties despite informing Defendant in advance of his intent to inspect the Properties. See Pl.'s Aff., ¶ 10–11.

3

12.     Following due diligence, the parties agreed to reduce the purchase price of the Contract to $2.5 million. See Amendment to Contract dated December 22, 2020, annexed hereto as **Exhibit C**.

13.     The closing on the Properties occurred, at the latest, in the morning or early afternoon of Friday, January 15, 2021. Defendant was aware that the closing had already occurred by the afternoon of January 15, 2021. See Pl.'s Aff., ¶ 13.

14.     Plaintiff, Defendant, and their respective transactional attorneys are all Orthodox Jews who cease to perform any work — including business deals and any usage of electronic forms of communication — prior to the onset of the Sabbath on Friday evening. See Pl.'s Aff., ¶ 14.

15.     On the Friday of the closing, the Sabbath began at approximately 4:35 PM. This was one of the earliest starting times for the Sabbath that year, and significant preparation needed to be done prior to the Sabbath, which is a busy time. See Pl.'s Aff., ¶ 14–15.

16.     Approximately two hours before the Sabbath, Defendant called Plaintiff informing him that Plaintiff needed to meet him that afternoon at a notary to sign important documents. According to Defendant, these were documents that had not been signed at closing and that had not been, and could not wait to be, circulated to Plaintiff's attorney, Jason Rebhun, Esq., for review. See Pl.'s Aff., ¶ 16.

17.     Plaintiff requested if this could wait until Sunday to allow his attorney time to review the documents, but Defendant refused and threatened to cancel the deal if Plaintiff did not go and sign them that day. See Pl.'s Aff., ¶ 17–18.

18.     Believing what turned out to be a false threat by Defendant, see Pl.'s Aff., ¶ 22, Plaintiff went and executed the documents which were presented to him outside of the context of the closing, the Note and Confession of Judgment. See Def Pl's Aff., ¶ 19.

4

Case 1:22-cv-02566-ALC Document 22-26 Filed 05/03/22 Page 6 of 20

19.     Defendant further represented that he would send these documents to Plaintiff's attorney after the Sabbath, an assurance which Plaintiff relied upon in signing those documents, but Defendant never did so. See Pl.'s Aff., ¶ 20.

20.     Plaintiff's counsel was totally unaware that these documents had been signed, or even that Defendant would be seeking the funds represented by the Note and Confession of Judgment. See Rebhun Aff., ¶¶ 5-10.

21.     In fact, the amounts allegedly owed pursuant to the Note and Confession, which Defendant now claims were part of the purchase price for the Properties, see Boroosan Affirmation in Support, ¶ 4, annexed hereto as **Exhibit I**, do not appear in any of the closing statements, nor was it ever represented to Plaintiff's counsel that those amounts were owed. See Rebhun Aff., ¶¶ 4-12.

22.     In fact, the closing statements from the closing do not reflect any additional consideration given beyond the purchase price, and they certainly do not reflect Six Hundred Seventy-Five Thousand Dollars ($675,000) of additional consideration. See Closing Statements from the subject closing, annexed hereto as **Exhibit D**.

23.     English is not Plaintiff's first language and his English education is, to put it mildly, not extensive, and he did not understand the content or significance of the documents he was rushed and pressured into signing on pain of losing the deal into which he had invested and been promised so much. See Pl.'s Aff., ¶ 21; Rebhun Aff., ¶ 20.

24.     Subsequent to the closing, Plaintiff learned that Defendant's representation, made subsequent to the execution of the Contract, that the Properties were fully occupied, was false. See Ex. A, Contract Rider, § 28(h); Ex. B.

5

25.     In fact, Defendant's representations regarding the rent information and rent rolls were so false that Defendant had clearly falsified the rent rolls, misrepresenting that all of the Properties were tenanted and occupied whereas in actuality less than half of the units at the Properties were tenanted and only around half of those occupied were paying rent. See Def Pl.'s Aff., ¶ 23.

26.     Likewise, it appears Defendant purposely did not make the building available to Plaintiff to inspect during his due diligence period. It turns out that many of the units Plaintiff was unable to inspect were in various states of disrepair, with holes in the ceilings, walls, and flooring and other issues. See Pl.'s Aff., ¶ 24; Photos from the Properties, annexed hereto as **Exhibit E**.

27.     In the context of a different business transaction between the parties that occurred around the same time regarding property in Illinois (hereinafter the "Illinois Transaction"), it became apparent that Defendant's attorneys, Mark J. Nussbaum & Associates PLLC, were facilitating Defendant's communications and Plaintiff's execution of legal documents in circumvention of Plaintiff's counsel. See Pl.'s Aff., ¶ 25.

28.     The night before the Illinois Transaction closed, Defendant again pressured and coerced Plaintiff into signing a note and confession of judgment outside of his counsel's presence and without his counsel's knowledge, this time at the offices of Mark J. Nussbaum & Associates PLLC. See Pl.'s Aff., ¶ 25–26; Rebhun Aff., ¶ 16.

29.     The morning of the closing of the Illinois Transaction, Plaintiff's attorney, Mr. Rebhun, discovered the existence of the documents improperly procured by Defendant and Defendant's counsel the night before, and that the rent roll Defendant had falsified to induce Plaintiff's signatures was materially inaccurate. Plaintiff's attorney immediately contacted Defendant's counsel to lodge his objection to those improperly procured documents, which

6

Defendant's counsel, upon confrontation by Plaintiff's counsel, conceded were void. <u>See</u> Pl.'s Aff., ¶ 29; Rebhun Aff., ¶ 17.

30.     In the wake of that incident, Plaintiff executed a statement wherein he recited these facts, which Notice was delivered to Defendant's counsel on the day of the closing of the Illinois Transaction, March 11, 2021. <u>See</u> Notice Regarding Kleinman Fraud, annexed hereto as **Exhibit K**.

31.     On January 4, 2022, Defendant commenced an action under Index Number 500593/2022 (hereinafter the "CoJ Action") by filing the Confession of Judgment (which is Plaintiff's Affirmation given late that Friday in January 2021), Defendant's Affirmation in support, the Note, and a proposed judgment. <u>See</u> CoJ Action NYSCEF Docket printout, annexed hereto as **Exhibit F**.

32.     However, the Confession of Judgment was rejected and not re-filed as "corrected" until two (2) days later. <u>See</u> <u>Id.</u>

33.     But the Confession of Judgment was a document that should not have changed at all in content after it was signed by Plaintiff. To do so would materially alter an instrument for its filing in Court, apparently in violation of Penal Law § 170.00 *et seq.*, New York's criminal forgery statute.

34.     In actuality, as has now been conceded by Defendant's attorney, Moshe Boroosan, Esq., during a conference in the CoJ Action, Defendant and/or his then-attorney, Efraim Lipschutz, Esq., altered the Confession of Judgment by crossing out the actual county in which it was intended to be filed, New York County, and hand-writing in Kings County. <u>See</u> the falsified Confession of Judgment as filed as "CORRECTED" on NYSCEF, annexed hereto as **Exhibit G**.

7

35.     This alteration is not merely non-substantive because the law requires that the affidavit of confession recite the County in which the defendant resides, and the subject Confession of Judgment does not specify a particular county or address of residence of Plaintiff and instead references "the address set forth both in the caption and below." But there was no address set forth below, and the county in the caption was changed subsequent to Plaintiff signing of it. See Pl.'s Aff., ¶¶ 19, 31, 38.

36.     As the Court can plainly see, this Judgment obtained by confession was improperly obtained in so many ways and entered notwithstanding that the Confession of Judgment was invalid on its face. As argued *infra*, the Judgment must be vacated, and at the very least it should not be enforced until the outcome of the instant action to, *inter alia*, vacate the Judgment is resolved.

**<u>ARGUMENT</u>**

**I.     <u>THIS COURT SHOULD VACATE THE JUDGMENT BECAUSE THE SUPPOSED CONFESSION OF JUDGMENT IS INVALID ON ITS FACE AND APPEARS TO HAVE BEEN FALSIFIED</u>**

37.     <u>C.P.L.R.</u> § 3218(a) dictates the statutory requirements for what must be included for an affidavit of confession of judgment. Included among those requirements is that the affidavit must "stat[e] the county where the defendant resides," <u>C.P.L.R.</u> § 3218(a)(1), and "stating concisely the facts out of which the debt arose and showing that the sum confessed is justly due or to become due," <u>C.P.L.R.</u> § 3218(a)(2).

38.     A court has jurisdiction to vacate a judgment upon either the ground of "fraud, misrepresentation, or other misconduct of an adverse party," <u>C.P.L.R.</u> § 5015(a)(3), or "lack of jurisdiction to render the judgment or order," <u>C.P.L.R.</u> § 5015(a)(4).

39.     The Second Department has reversed lower courts which have denied motions to set aside and vacate judgments entered by confession where, regarding the affidavit of confession

8

Case 1:22-cv-02566-ALC   Document 22-26   Filed 05/03/22   Page 10 of 20

of judgment, there were questions "whether it complied with CPLR 3218." <u>Ripoll v. Rodriguez</u>, 53 A.D.2d 638, 638 (2nd Dep't 1976); <u>see also</u> <u>Corrales v. Walker</u>, 20 Misc. 3d 285, 289 (Dist. Ct. Nassau Cty. 2008) ("[I]t is clear that the affidavit executed by the Plaintiff does not conform with CPLR 3218 (a)…and is void as a matter of law since the affidavit does not state (1) the county in which the Plaintiff resides.").

40.      It is well established that "[t]he right to enter judgment, based upon a statement of confession, is derived from the statute and is dependent upon **strict compliance with the pertinent statutory provisions**." <u>Cty. Nat'l Bank v. Vogt</u>, 28 A.D.2d 793, 794 (3rd Dep't 1967), <u>aff'd</u> 21 N.Y.2d 800 (N.Y. 1968) (emphasis added).

### A. <u>The Confession Is Void and the Judgment Must be Vacated Because the Confession Fails to State the Facts out of Which the Purported Debt Arose</u>

41.      <u>C.P.L.R.</u> § 3812(a)(2) requires that where a "judgment to be confessed is for money due or to become due," the affidavit of confession must "stat[e] concisely the facts out of which the debt arose."

42.      The Confession of Judgment is wholly deficient with respect to this requirement. The Confession of Judgment makes a passing reference to "a debt justly due to Plaintiff under the terms of a certain Note, Pledge and Security Agreement."

43.      A Note, on its own, does not create a debt. Rather, "a promissory note is delivered and accepted as <u>evidence</u> of a debt." <u>Scaccia Concrete Corp. v. Hartford Fire Ins. Co.</u>, 280 A.D.2d 538, 539 (2nd Dep't 2001) (emphasis added) (internal quotation omitted). The Confession of Judgment, however, is entirely silent as to any facts regarding how this purported debt arose.[1]

---

[1] This failure to recite facts out of which the debt arose is entirely unsurprising; as discussed *infra*, **no such debt exists**, necessitating vacatur of the Judgment. However, even assuming, *arguendo*, that a debt did exist, the failure to recite the facts out of which that debt arose is a separate basis upon which to vacate the Judgment entered pursuant to the facially invalid Confession of Judgment.

9

44.     Because the Confession of Judgment failed to state the facts out of which the purported debt arose, it was violative of <u>C.P.L.R.</u> § 3812(a)(2) and invalid on its face. Consequently, the Judgment entered pursuant to it must be vacated.

**B.   <u>The Confession Is Void and the Judgment Must be Vacated Because the Confession Fails to Specify the County of Plaintiff's Residence</u>**

45.     The Confession of Judgment in the instant action is also void as invalid on its face because the Confession of Judgment is internally contradictory as to the purported county the Confession of Judgment could be read to state where Plaintiff resides.

46.     The proffered Confession of Judgment states that the Plaintiff "reside[s] at the address set forth both in the caption and below." Ex. G, ¶ 1. As an initial matter, no address is listed anywhere in the Confession of Judgment.

47.     And regarding the county listed in the affirmation, the affirmation alternates between listing the county as New York County and Kings County. Immediately above the caption is printed "COUNTY OF NEW YORK." However, "New York" appears as having been crossed out, without any indication for when this alteration happened (no initials, no other indication as to who made the change), and "KINGS" is handwritten next to it. Immediately below the caption, the affirmation states "STATE OF NEW YORK, COUNTY OF NEW YORK."  At the bottom of the affirmation, the affirmation indicates it may have been signed in "Kings County, New York." Ex. G.

48.     Furthermore, because there is no indication when the alteration to the caption was made, it was improper for the judgment to be entered in Kings County where the caption, as printed, plainly reads New York County. See <u>Irons v. Roberts</u>, 206 A.D.2d 683, 684 (3rd Dep't 1994) ("Notably, CPLR 3218 (b) authorizes entry of the judgment only in the county

Case 1:22-cv-02566-ALC   Document 22-26   Filed 05/03/22   Page 12 of 20

designated in the debtor's affidavit, and entry of the judgment in an unauthorized county renders it void.").

49.     Crucially, to the extent that there is **any** ambiguity regarding whether the Confession of Judgment was invalid, that ambiguity must be resolved **in favor of Plaintiff**. Id. ("In assessing a judgment by confession, a liberal attitude should be assumed in favor of the judgment obligor."); <u>Ripoll</u>, 53 A.D.2d, at 638 ("Confessions of judgment are always carefully scrutinized and, in judging them, a liberal attitude should be assumed in favor of judgment debtor.").

50.     Where "strict compliance with the pertinent statutory provisions" is necessary to enforce a confession of judgment, Judgment should never have been entered pursuant to this internally inconsistent Confession of Judgment. <u>Vogt</u>, 28 A.D.2d, at 794. As such, this Court should vacate the Judgment for lack of jurisdiction to enter it pursuant to <u>C.P.L.R.</u> § 5015(a)(4).

### C.   <u>The Available Evidence Shows That Defendant and/or Defendant's Counsel Falsified the Affirmation of Confession of Judgment by Altering It</u>

51.     More distressingly, however, the available evidence shows that Defendant and/or Defendant's counsel falsified the Confession of Judgment by altering it and offering the altered version upon which for the Court to enter Judgment by Confession.

52.     Specifically, the evidence shows that the Confession of Judgment was initially rejected by the Clerk's Office on January 4, 2022. <u>See</u> Ex. F.

53.     It was only two days later, on January 6, 2022, that Defendant finally filed the "CORRECTED" version of that affirmation of Confession of Judgment. See Ex. F.

54.     However, the only alteration that appears on the face of the document now available on the NYSCEF docket as Doc. No. 1 is the cross-out of the County name and the handwritten "KINGS" referenced above.

11

55. Defendant's current counsel, Moshe Boroosan, Esq. conceded at a motion conference on April 6, 2022[2] that the document had been initially rejected and altered to substitute the County of KINGS in the caption.

56. As noted *supra*, this is **not merely a clerical change** with no substance to it. Instead, it is a substantive change to the document, given that (a) the county of the debtor's residence is a required element for a valid confession of judgment; (b) the debtor (here, Plaintiff) actually resides in Kings County; (c) the affirmation of confession does not contain a specified address or county of residence; and (d) the affirmation of confession instead points back to the "address set forth in the caption" (of which there was none, but there was the listed county which has now been crossed out, although not by Plaintiff before he signed it).

57. The alteration of the County in the caption, thus, is the only means by which Defendant could even claim to have an enforceable Confession of Judgment.

58. However, Defendant cannot alter the document *ex post facto* by changing the listed "county of residence of" Plaintiff because an affidavit cannot be altered after it is signed by the affiant.

59. In fact, making this alteration and even offering the same appears to be an act of offering a false instrument to the Clerk of this Court, which act may constitute forgery. See Penal Law § 170.00 *et seq*.

60. Because the available evidence indicates that the Confession of Judgment offered to the Clerk and upon which the Clerk entered Judgment by Confession was materially altered by Defendant and/or his counsel, which act may constitute forgery, the Judgment should be vacated pursuant to C.P.L.R. §§ 5015(a)(3) and (a)(4).

---

[2] This conference was held with Justice Wade's law clerk Mr. Hassan and was not on the record.

12

Case 1:22-cv-02566-ALC   Document 22-26   Filed 05/03/22   Page 14 of 20

## II.   THIS COURT SHOULD VACATE THE JUDGMENT BECAUSE THERE IS NO INDEBTEDNESS OWED BY PLAINTIFF TO DEFENDANT

61.    Notwithstanding that the Confession of Judgment was invalid on its face, both it and the Note underlying it are void and unenforceable because the debt they purport to represent — the consideration for those purported agreements — does not actually exist.

62.    The Court of Appeals has repeatedly held, for well over 100 years, that "fraud, illegality, want of consideration, delivery upon an unperformed condition and the like may be shown by parol, not to contradict or vary, but to destroy a written instrument." Thomas v. Scutt, 127 N.Y. 133, 137 (N.Y. 1891) (emphasis added); see also Jamestown Bus. Coll. Ass'n v. Allen, 172 N.Y. 291, 294 (N.Y. 1902) (recognizing that a party can submit evidence to show "a written instrument which purports to be a contract is in fact no contract at all").

63.    "The common-law rule is that a promissory note is delivered and accepted as evidence of a debt." Scaccia, 280 A.D.2d, at 539 (emphasis added) (internal quotation omitted). The natural corollary of such a rule is that "but for the original consideration, the note would have no force. It is but a promise to pay, put in writing. It there is no debt existing to be paid, the promise to pay it is, so to speak, null." Indus. Bank of Commerce v. Shapiro, 276 A.D. 370, 372 (1st Dep't 1950).

64.    Defendant's original affirmation in support of entry of the judgment by confession did not discuss at all the circumstances under which the Note was executed. See Defendant's Affirmation in Support, ¶ 3, annexed hereto as **Exhibit H**. Only in his attorney's affirmation in support of his Order to Show Cause seeking enforcement, sanctions, and a finding of contempt in connection with information subpoenas sent pursuant to the Judgment was it finally "disclosed" that the Note was purportedly executed "[t]o finance the remainder of the purchase price" of the Properties as part of the New Jersey Transaction. Ex. I, ¶ 4.

13

65.     Defendant's attorney's affirmation glosses over how much the purchase price for the Properties was, merely stating in conclusory fashion that the $675,000 debt in the Note represented "the remainder." The reason for his failure to explain how that number was reached is clear: **there was no remainder of the purchase price**. It has been invented for the purposes of entering a fictional "debt" against Plaintiff.

66.     No such remainder appears on any of the settlement statements related to the New Jersey Transaction, which closed for $2,500,000. <u>See</u> Exs. C, E; Rebhun Aff., ¶¶ 11–12.

67.     It is clear that the purported debt evidenced by the Note does not exist. Because of that fact, "there is no debt existing to be paid, [and] the promise to pay it is, so to speak, null." <u>Indus. Bank</u>, 276 A.D., at 372. Consequently, the Judgment entered pursuant to the Confession of Judgment, explicitly relying on the Note as a basis for the indebtedness,[3] must be vacated.

## III.   THIS COURT SHOULD VACATE THE JUDGMENT BECAUSE THE CONFESSION OF JUDGMENT WAS OBTAINED BY FRAUDULENT INDUCEMENT

68.     Assuming, *arguendo*, that this Court does not find that the Judgment is unenforceable because the Confession of Judgment was invalid on its face and/or was actually a forged instrument, nor, at this time, that the debt alleged in the Note and Confession of Judgment was nonexistent, this Court should vacate the Judgment because it was procured by fraudulent inducement.

69.     "To sustain a claim for fraudulent inducement, there must be a knowing misrepresentation of material fact, which is intended to deceive another party and to induce them to act upon it, causing injury." <u>Sokolow v. Lacher</u>, 299 A.D.2d 64, 70 (1st Dep't 2002).

---

[3] As discussed *supra*, this reference to the Note in the Confession of Judgment, without stating the "facts" giving rise to the underlying "indebtedness," is an independent basis upon which to vacate the Judgment.

14

70. Defendant's threat that he would cancel the deal if Plaintiff did not sign the Note and Confession of Judgment was a misrepresentation, considering the deal had already closed; this misrepresentation was either knowingly false or made with a reckless disregard for its truth. See Bank of N.Y. v. Realty Grp. Consultants, 186 A.D.2d 618, 618-19 (2nd Dep't 1992) ("[T]o succeed on a claim of fraud, a party must demonstrate that a false representation was made which was known to be untrue or which was made with reckless disregard of the truth.").

71. Furthermore, Defendant falsely represented he would send the documents to Plaintiff's counsel; this representation was knowingly false when made, as revealing those documents to Plaintiff's attorney would have led to those documents being disavowed, as occurred in the context of the Illinois Transaction.

72. Defendant made his threat, and the promise to send the documents to Plaintiff's attorney after the Sabbath, specifically in response to Plaintiff's request to sign the documents at a later time and to show his attorney the documents Defendant wanted him to sign. That Defendant's intent was to induce reliance on his misrepresentation is beyond peradventure, establishing another element of fraudulent inducement.

73. Plaintiff, under significant pressure and duress in signing the Note and Confession of Judgment, relied on Defendant's misrepresentations (1) that he would cancel the deal and (2) that he would give copies of the documents to Plaintiff's counsel after the Sabbath.

74. Plaintiff was injured in signing a Note and Confession of Judgment for funds that were never advanced by Plaintiff and that were never actually owed to Defendant. See Nro Bos. Llc v. Yellowstone Capital Llc, 72 Misc. 3d 267, 273 (Sup. Ct. Rockland Cty. 2021) ("Plaintiffs' alleged liability on the Judgments by Confession resulting from the pattern of racketeering activity is a clear and definite injury."). Had those funds actually been owed by Plaintiff, the closing could

15

not have occurred without those documents being furnished to the title company, other lenders, and Plaintiff's counsel, and they would have been reflected on the settlement statements.

75.     Plaintiff was further fraudulently induced into closing on the purchase of the Properties based on Defendant's misrepresentation of the rent rolls of the Properties, which misrepresentation was made both before and after the signing of the Contract.

76.     Defendant could not possibly have been unaware of the significant discrepancy between the amounts he represented were being collected in rent and the amounts he actually received. Even if, *arguendo*, he were not aware, then his representations were made with reckless indifference as to the truth of those representations.

77.     Such misrepresentations were made with the intent to induce Plaintiff into closing on the deal. Plaintiff, who closed on the deal and ended up with Properties that were much less lucrative than Defendant told Plaintiff they were and would be, was caused significant damages.

78.     Where a party fraudulently induces another to enter into an agreement, rescission is appropriate. See Sokolow v. Lacher, 299 A.D.2d 64, 70 (1st Dep't 2002) ("These allegations state a viable claim for rescinding the Agreement based on fraudulent inducement.").

79.     This is all the more so appropriate where an agreement procured by fraud is executed by someone who could not understand the content of the agreement and did not have the opportunity to find someone to read it to him. See Shklovskiy v. Khan, 273 A.D.2d 371, 372 (2nd Dep't 2000) (recognizing that, where an agreement is procured by fraud against a party who could not understand, it is only "[a] party who signs a document without any valid excuse for having failed to read [tha]t is conclusively bound by its terms").

80.     Plaintiff, unable to understand the documents he was signing on his own, under significant pressure, and without the assistance of his counsel who helped him with the rest of the

Case 1:22-cv-02566-ALC   Document 22-26   Filed 05/03/22   Page 18 of 20

transaction, did not have an opportunity to find someone else to read them for him due to Defendant's acute pressure tactics. Defendant imposed an artificial deadline on Plaintiff's execution of the Note and Confession of Judgment, knowing that Plaintiff would not be able to find someone to explain the documents to him so close to the Sabbath and that Plaintiff would respond to the threat to cancel the deal and thereby lose what he had contributed.

81.    Equity requires the rescission and/or vacatur of the Confession of Judgment and Note, which were not signed in connection with any *bona fide* indebtedness of the Plaintiff. The suggestion that it was related to the underlying transaction to close on the Contract, as amended, is belied by the fact that it was never delivered to the numerous entities taking part in the closing on the Contract. Rather, Defendant caused Plaintiff to sign those documents under duress, through fraudulent inducement, to evidence a solely on-paper debt that existed only in Defendant's mind, and the same should be disregarded.

82.    In light of the foregoing, the Judgment should be vacated pursuant to C.P.L.R. § 5015(a)(3).

### IV.    IF THE COURT DOES NOT IMMEDIATELY VACATE THE JUDGMENT, AN INJUNCTION SHOULD ISSUE ENJOINING DEFENDANT FROM ENFORCING THAT JUDGMENT PENDING THE OUTCOME OF THE CASE

83.    The standard for obtaining a preliminary injunction is, by now, very familiar. A party must "demonstrate a probability of success on the merits, a danger of irreparable injury in the absence of an injunction, and a balance of equities in that party's favor." Jones v. State Farm Fire & Cas. Co., 189 A.D.3d 1565, 1566 (2nd Dep't 2020). Plaintiff plainly meets all of these required elements.

84.    Plaintiff's probability of success on the merits is discussed *supra* and clearly establishes Plaintiff's entitlement to vacatur of the Judgment. At the very least, Plaintiff has established a mere probability of success, which is more than sufficient to grant an injunction.

17

85.     Moreover, the harm that has ensued and will continue to ensue absent an injunction is quite clear. Plaintiff has testified to the harm he and his family continue to experience while being hounded by a fictional "creditor" and overly aggressive attorneys who have offered forged instruments upon which for the Court to enter and enforce a Judgment. See Pl.'s Aff., ¶ 40. Defendant has sought to hold Plaintiff in contempt and to compel responses from others on pain of contempt, all part of a pattern of fraudulent activity that abuses Court process in order to coerce Plaintiff into paying the fictional "debt." The harm here is evident. See Nro Bos. Llc v. Yellowstone Capital Llc, 72 Misc. 3d 267, 273 (Sup. Ct. Rockland Cty. 2021) ("Plaintiffs' alleged liability on the Judgments by Confession resulting from the pattern of racketeering activity is a clear and definite injury.").

86.     Finally, the balance of equities clearly favors Plaintiff. As discussed in relation to the merits above, Plaintiff has demonstrated that there is and was no debt due and owing to Defendant for the "remainder of the purchase price," that the Confession of Judgment was deficient in multiple material respects, that the Confession of Judgment was forged, and that the Confession of Judgment was fraudulent induced.

87.     Meanwhile, it must emphasized that through the grant of this injunction, no harm can possibly befall Defendant. Defendant is seeking to enforce a money judgment, the pause of which cannot be irreparable harm.

88.     There have been no other proceedings for the relief sought herein

**WHEREFORE**, your Affirmant prays for an Order grnating all relief sought in the instant Order to Show Cause, and for such other and further relief as to the Court may seem just, equitable, and proper.

Case 1:22-cv-02566-ALC Document 22-26 Filed 05/03/22 Page 20 of 20

Dated: April 8, 2022
      Monsey, New York

              Marc Wohlgemuth & Associates P.C.

              ___*/s/Jeremy M. Doberman*_____
              By:    Jeremy M. Doberman, Esq.
              *Attorneys for Plaintiff*
              21 Remsen Avenue
              Monsey, New York 10952
              845-746-2700

19