UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No.  1:22-cv-2566-ALC

ABRAHAM KLEINMAN,

                                    Plaintiff,

            v.

ROC CAPITAL HOLDINGS LLC,
CHAIM PORGES, and HELENA
PORGES,

                              Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR THE APPOINTMENT OF A TEMPORARY RECEIVER AND MOTION FOR EXPEDITED DISCOVERY

LAW OFFICES OF MOSHE BOROOSAN, P.C.
1318 Avenue J, 2nd Floor
Brooklyn, NY 11230
(404) 857-6229

*Attorney for Plaintiff Abraham Kleinman*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………….....……………………...…………..1

RELEVANT FACTUAL BACKGROUND……………………………....……………2

   A.  The New Jersey Transaction……………………………………….………….2

   B.  The Fraudulent Roc Capital Transaction ……………………….…………..3

   C.  The Illinois Transaction…………………………………………….…………4

   D.  The Fraudulent Regeis Transaction …………………………….……………..4

ARGUMENT ……………………………………....……………….....……..5

  I.  The Court Should Appoint a Receiver for the New Jersey
     Properties……………....……………………………………………… 5

   A.  This Court's Authority to Appoint a Receiver…………………………… 5

   B.  Federal Receivership Standards …………………………………….. 6

   C.  A Receiver is Both Necessary and Appropriate in This Case …………… 7

      1.  Fraudulent Activity Has Already Occurred and Will
         Likely Occur Again, and Poses An Imminent Danger
         that the New Jersey Properties will be Lost…………………………… 7

           i.    Fraud in the New Jersey Transaction ………………..…… 7

           ii.   Fraud in the Illinois Transaction …………..…………… 8

           iii.  False and Misleading Court Submissions ………………… 8

      2.  Likelihood of Additional Fraudulent Conduct ...……………….......... 10

      3.  Plaintiff Lacks Alternative Remedies ...……………...…………… 10

   E.  *Ex Parte* Relief is Appropriate …………….....………………….…… 11

  II.  Expedited Discovery is Warranted ………………….……………..…... 11

CONCLUSION………....………………….....………….....……………….… 16

i

## **TABLE OF AUTHORITIES**

# Cases

*3M Co. v. HSBC Bank USA, N.A.*,
No. 16 Civ. 5984, 2016 WL 8813992, at *1 (S.D.N.Y. Oct. 20, 2016) ………………..………12

*Ayyash v. Bank Al-Madina*,
233 F.R.D. 325, 327 (S.D.N.Y. 2005) …………………………………………………………..12

*Blue Citi LLC v. 5Barz Int'l Inc.*,
No. 16-cv-9027-VEC, 2019 WL 6976972, at *3 (S.D.N.Y. Dec. 20, 2019) ……………………11

*Cengage Learning, Inc. v. Doe 1*,
No. 18-cv-403, 2018 WL 2244461, at *4 (S.D.N.Y. Jan. 17, 2018) …………………..………12

*Crawford v. Silette*,
608 F.3d 275, 278 (5th Cir. 2010) …………………………………………………………..………5

*Federal Home Loan Mort. Corp. v. Tully Village Edge Apartments*,
1997 WL 10975, at *1 (N.D.N.Y. Jan. 2, 1997) …………………………………………………11

*Gorden v. Washington*,
295 U.S. 30, 37 (1935) ……………………………………………………………………..………7

*Greystone Bank v. Tavarez*,
No. 09-cv-5192, 2009 WL 10712899, at *2 (E.D.N.Y. Dec. 17, 2009) …………………..………11

*Janvey v. Reeves-Stanford*,
No. 3:09-cv-2151-N, 2010 WL 11463486, at *3 (N.D. Tex. Nov. 18, 2010) ……………..………6

*JPMorgan Chase Bank, N.A. v. Heritage Nursing Care, Inc.*,
2007 WL 2608827, at *7 (N.D. Ill. 2007) ……………………………………………………………6

*Morgan v. McDonough*,
540 F.2d 14, 36 (1st Cir. 1976) ……………………………………………………………..………5

*Nat'l P'ship Inv. Corp. v. Nat'l Housing Dev. Corp.*,
153 F.3d 1289, 1291 (11th Cir. 1998)……………………………………………………..………6

*Netsphere, Inc. v. Baron*,
703 F.3d 296, 305 (5th Cir. 2012) …………………………………………………..………..………7

*Spotnana, Inc. v. American Talent Agency, Inc.*,
2013 WL 22746, at *5  (S.D.N.Y. Jan. 22, 2013) ………………………………..………..………10

*Sterling v. Stewart*,

158 F.3d 1199, 1201 (11th Cir. 1998) ……………………………………………...……6

*United States v. Bartle*,
159 Fed. App'x 723, 725 (7th Cir. 2005) …………………………………………...……5

*U.S. Bank N.A. v. Nesbitt Bellevue Property LLC*,
866 F. Supp. 2d 247, 249 (S.D.N.Y. 2012) ……………………………………...……6

*Varsames v. Palazzolo*,
96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) ………………………………………...……7

**Statutes and Regulations**

28 U.S.C. §754  ............................................................. ……1, 5

28 U.S.C. §1332  ............................................................ 5

**Rules**

Fed. R. Civ. P.  26(d)(1) ........................................................1, 11

Fed. R. Civ. P.  45................................................................1, 12

Fed. R. Civ. P. 66................................................................1, 6

Plaintiff Abraham Kleinman ("Kleinman" or "Plaintiff") submits this memorandum of law in support of its motion: (i) pursuant to Fed. R. Civ. P. 66 and 28 U.S.C. § 754, seeking the immediate appointment of a receiver over defendants Chaim Porges and Helena Porges (the "Porges Defendants"), their assets, properties, facilities, insurance, accounts, and books and records; and (ii) pursuant to Fed. R. Civ. P. 26(d)(1) and 45, to expedite discovery and issue subpoenas relating to the Porges Defendants' assets, affiliates, and conduct.[1]

## PRELIMINARY STATEMENT

This action and this motion are in response to a brazen fraud by Defendant Chaim Porges his attorney Jason J. Rebhun, Esq., and others involving two separate real estate transactions (the New Jersey Transaction and the Illinois Transaction) and over $1.6 million of indebtedness procured by Mr. Porges, his mother (defendant Helena Porges), and Attorney Rebhun through false statements, false representations, and forged documents.

The evidence compiled to date is damning.  Mr. Porges was the purchaser in two separate commercial real estate transactions that required partial seller financing.  In consideration for that financing, Mr. Porges provided the seller – Plaintiff – with a promissory note and an assignment of interest in the acquiring entities.

After he defaulted on the notes, Mr. Porges, his mother, and Attorney Rebhun have repeatedly forged corporate documents to either obtain massive loans against properties that Mr. Porges does not fully own, and sold other properties outright, only to abscond with the profits. These two men have then stonewalled Plaintiff's efforts to protect his interests by submitting a series of demonstrably false and perjured affidavits, claiming that the notes were fraudulent and unenforceable.

---

[1] All "¶___" or "¶¶__" references are to the  accompanying Declaration of Abraham Kleinman dated May 3, 2022 with exhibits thereto.  All capitalized terms have the same meaning ascribed to them in the Kleinman Declaration.

Plaintiff therefore brings this motion to appoint a receiver to the New Jersey Properties to protect whatever interest he has left in those properties.

Plaintiff also moves for authorization to immediately serve subpoenas and seek discovery from nonparty entities affiliated with the Porges Defendants who may be in possession of information or assets associated with the Porges Defendants' fraud, or information related to assets or affiliates of the Porges Defendants. These actions are necessary to unravel a byzantine network of limited liability companies associated with Mr. Porges, identify other potential participants in the fraud, and ensure that assets that may be available are not dissipated and remain available.

## RELEVANT FACTUAL BACKGROUND

### A.  The New Jersey Transaction

The New Jersey Transaction involved a portfolio of five properties located in New Jersey. ¶4.  In October 2020, Plaintiff contracted to sell the New Jersey Properties to Mr. Porges for $3,150,000, a figure that was later reduced to $2,500,000. ¶6.

Mr. Porges obtained a $1,781,000 loan from Broadview Capital, LLC, but did not have the funds to cover the balance of the contract price and closing costs. ¶¶8-9. On or about January 13, 2021, Riverside Abstract, the title company for the transaction, alerted the parties that they needed full funding of the purchase price in order to close.  ¶11.  This requirement was reiterated in several emails sent to Attorney Rebhun (transactional counsel to Mr. Porges) and others on January 14, 2021.  ¶¶12-14.

To save the deal, Plaintiff agreed to facilitate a loan to Mr. Porges for the balance of the purchase price in exchange for a promissory note, a confession of judgment, and an assignment of interest in the acquiring entity, Bleubell Broad LLC.  ¶15.  Plaintiff then instructed his attorney to transfer $790,000 to Attorney Rebhun's trust account to cover the balance of the contract cost and

all closing costs. ¶16.  On January 14, 2021 at  2:27 pm, Plaintiff's attorney (Mark Nussbaum, Esq.) initiated a wire transfer for $790,000 to Jason Rebhun's attorney trust account. ¶17.  About an hour later, Jason Rebhun wired $790,000 to Riverside Abstract with the text: "For further credit to Bleubell Broad LLC."  ¶18.

That evening, Mr. Porges executed four documents, including: (i) the 540 Note; (ii) the 540 COJ; (iii) an *Iska* Agreement required by Jewish law authorizing the payment of interest on the 540 Note; and (iv) an assignment of interest dated January 13, 2021 making Plaintiff a 50% owner of Bleubell Broad LLC.  ¶¶19-20.

The loan from Broadview Capital funded on January 15, 2021 and the New Jersey Transaction closed. ¶21.  The settlement statements for the New Jersey Transaction confirm that the principal amount of the Broadview Capital loan was $1,781,000 and the "Balance Due From Buyer" totaled $726,373.03.  *Id.*

After the transaction closed and all disbursements were made, Plaintiff determined that Mr. Porges' indebtedness exceeded $540,000.  ¶22.  Plaintiff provided Mr. Porges with a revised promissory note in the original principal amount of $675,000 (the "675 Note") and an affirmation of confession of judgment authorizing the entry of judgment in the same amount (the "675 COJ"). ¶23. Mr. Porges signed and returned both documents the same day.  ¶24.

Mr. Porges defaulted on the 675 Note and ignored Plaintiff's demands for repayment. ¶¶35-37.  On January 4, 2022, Plaintiff judgment in New York State Court and hire counsel to begin enforcing the judgment. *See generally*  ¶¶49-68.

### B.  The Fraudulent Roc Capital Transaction

Unbeknownst to Plaintiff, in or about October, 2021, Mr. Porges, Attorney Rebhun, and defendant Helena Porges (the mother of Mr. Porges) conspired take out a new loan against the New Jersey Properties using fraudulent corporate documents that falsely stated that Helena Porges

was the 90% owner of Bleubell Broad.  ¶38.  These documents included an Amended Operating Agreement, a Unanimous Consent of the Members of Bleubell Broad LLC, and others.  ¶¶39-40. Jason Rebhun played a crucial role in the scheme; he represented the Porges Defendants in the transaction and  prepared an opinion letter falsely stating that Helena Porges was the 90% owner of Bleubell Broad LLC.  ¶¶41-42.

### C.  The Illinois Transaction

The Illinois Transaction involved a portfolio of four properties located in Chicago (the "Chicago Properties") owned by two separate LLCs controlled by Plaintiff. ¶25.  In March 2021, Plaintiff contracted to sell the Chicago Properties to Mr. Porges and his partner for a purchase price of $5,460,000.  ¶26.  Again, Jason Rebhun represented Mr. Porges in the deal.  ¶27.

Mr. Porges was able to secure a loan brokered by Castling Capital and funded by A&S Capital LLC in the principal amount of $4,893,750.  ¶28. To cover the $566,250 spread between the purchase price and the loan, as well as an additional $357,480.63 of purchaser expenses, Mr. Porges agreed to provide a promissory note for $923,730.63 and an assignment of his membership interest in the Chicago entities to Mr. Kleinman.  ¶29. Mr. Porges executed the assignment of interest on March 10, 2021, and executed the 923 Note the next day. ¶¶31, 34.[2]

### D.  The Fraudulent Regeis Transaction

Less than four months later, Attorney Rebhun and Mr. Porges conspired to sell the Chicago Properties for $7,500,000.  ¶43.  Property records obtained from the Cook County Clerk's Office show that on July 28, 2021, Mr. Porges executed two separate warranty deeds[3] conveying the

---

[2] There is some ambiguity about what transpired between March 10 and March 11, 2021.  It appears that Mr. Porges initially executed the 923 Note, the Chicago Assignment, and a confession of judgment at the offices of seller's counsel on March 10, 2021.  The next day, Mr. Porges' attorney demanded the retraction of the confession of judgment, ratified the Chicago Assignment, and had Mr. Porges execute a new note for the same amount.  *See* ¶¶31-34.

[3] One for Chicago First Tower LLC and one for Chicago Second Tower LLC.

Chicago Properties to an entity called Regeis Chicago Realty LLC.  ¶44.  The website of the Cook County Clerk indicates that the warranty deeds were not recorded until February 3, 2022, and were not uploaded to the Cook County Clerk's system until March 22, 2022. ¶45.

Each warranty deed was signed by "Chaim Porges, the Sole Manager of Chicago [First/Second] Tower LLC."  ¶46.  Each warranty deed was prepared by Jason Rebhun.  ¶47.  And each warranty deed was notarized by Jason Rebhun.  *Id.*  Rebhun prepared, and Mr. Porges signed, these warranty deeds less than four months after ratifying the Chicago Assignment. ¶48.

## ARGUMENT

## I.    The Court Should Appoint a Receiver for the New Jersey Properties

### A.    This Court's Authority to Appoint a Receiver

As set forth in the Complaint, this Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are citizens of different states.  Accordingly, this Court has the inherent equitable power to appoint a receiver. *See United States v. Bartle*, 159 Fed. App'x 723, 725 (7th Cir. 2005); *Morgan v. McDonough*, 540 F.2d 14, 36 (1st Cir. 1976) ("receiverships are and have for years been a familiar equitable mechanism. They are commonly a vehicle for court supervision of distressed businesses, but has not been limited to that role.") (internal citation omitted).

Under 28 U.S.C. § 754, a "receiver appointed in any civil action or proceeding involving property, real personal or mixed, situated in different districts shall . . be vested with complete jurisdiction and control or all such property with the right to take possession thereof." Accordingly, a receiver appointed in this action would have complete federal statutory jurisdiction over the Defendants, their assets, properties, facilities, insurance, accounts, and books and records, located both in this district and elsewhere as they may be identified and located.  *See Crawford v. Silette*, 608 F.3d 275, 278 (5th Cir. 2010) (stating that "federal law creates subject matter

jurisdiction for federal receivers"); *Janvey v. Reeves-Stanford*, No. 3:09-cv-2151-N, 2010 WL 11463486, at *3 (N.D. Tex. Nov. 18, 2010) (stating that "the location of the property sought by the Receiver has not bearing on standing" because 28 U.S.C. § 754 provides a receiver with complete jurisdiction over all property situated in different districts).

In sum, this Court is best suited to adjudicate this case and has the authority to appoint a receiver over Defendants and all of Defendants' assets, properties, facilities, insurance, accounts, and books and records, wherever they may be located.

### B.    Federal Receivership Standards

It is well established in the Second Circuit that "[f]ederal law governs the appointment of a receiver by a federal court exercising diversity jurisdiction." *U.S. Bank N.A. v. Nesbitt Bellevue Property LLC*, 866 F. Supp. 2d 247, 249 (S.D.N.Y. 2012); *Sterling v. Stewart*, 158 F.3d 1199, 1201 (11th Cir. 1998) (citation omitted).   Fed. R. Civ. P. 66 states that "[t]hese rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice or administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule."   Accordingly, the federal common law relating to receiverships is applied for such matter, and, therefore, state law has no relevance." *JPMorgan Chase Bank, N.A. v. Heritage Nursing Care, Inc.*, 2007 WL 2608827, at *7 (N.D. Ill. 2007).   The federal standard for the appointment of a receiver may be less stringent than state law. *See Nat'l P'ship Inv. Corp. v. Nat'l Housing Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998).

Although Fed. R. Civ. P. 66 does not establish specific guidelines, New York district courts consider the following circumstances relevant in connection with a motion for a receiver: (i) fraudulent conduct on the part of the defendant; (ii) the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (iii) the inadequacy of available legal remedies; (iv) the probability that harm to plaintiff by denial of the appointment would be greater

than the injury to the parties opposing appointment; and, in more general terms, (v) the plaintiff's probably success in the action and the possibility of irreparable injury to his interests in the property." *Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000).

"[A] district court has the authority to place into receivership assets in litigation 'to preserve and protect the property pending its final disposition." *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) (citing *Gorden v. Washington*, 295 U.S. 30, 37 (1935)). The appointment of a receiver is warranted "where there is a clear necessity to protect a party's interest in property, legal and less drastic remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties." *Netsphere*, 703 F.3d at 305 (internal quotations omitted).

## C.     A Receiver is Both Necessary and Appropriate in This Case

### 1.  *Fraudulent Activity Has Already Occurred and Will Likely Occur Again, and Poses an Imminent Danger that the New Jersey Properties will be Lost*

Plaintiff's evidentiary submissions show not only that fraudulent activity has occurred in the New Jersey and Illinois Transactions, but also that Mr. Porges and Attorney Rebhun have perpetrated a fraud on the Court by submitting demonstrably false affirmations.

### a.    <u>Fraud in the New Jersey Transaction</u>

With respect to the New Jersey Transaction, Mr. Porges and Attorney Rebhun conspired to fabricate corporate documents identifying defendant Helena Porges as the 90% owner of Bleubell Broad LLC. *See* ¶¶38-42. These documents – which included an attorney opinion letter attesting that Helena Porges was a 90% owner and was authorized to bind Bleubell Broad – were then used to fraudulently obtain the Roc Capital loan. *Id.*

Both Mr. Porges and Attorney Rebhun knew that this opinion letter was false. In fact, Attorney Rebhun himself submitted a different opinion letter in the New Jersey Transaction attesting that Chaim Porges was the sole member of Bleubell Broad. ¶42.

b.   *Fraud in the Illinois Transaction*

The evidence shows that Mr. Porges and Attorney Rebhun engaged in similar fraudulent conduct in the Illinois Transaction. *See generally* ¶¶43-48. The Illinois Transaction closed in March 2021. ¶30. On March 10, 2021, Mr. Porges executed the Chicago Assignment, an instrument that conveyed his entire stake in the Chicago entities to Plaintiff and "reduce[d] [his] membership in the Company to Zero (0%) percent." *See* Ex. 12. Attorney Rebhun knew about the Chicago Assignment, reviewed it, and ratified it by emailing it back to Plaintiff's counsel. ¶32.

Yet, by July 2021, Mr. Porges had already secured a new buyer, Attorney Rebhun had prepared deeds showing identifying Mr. Porges as "the Sole Manager of Chicago [First/Second] Tower LLC," and the Illinois Properties were conveyed to a new owner. ¶¶43-44; Ex. 18.[4]

c.   *False and Misleading Court Submissions*

The record shows that the affirmations submitted by Mr. Porges and Attorney Rebhun contained numerous materially false and misleading statements and material omissions, as follows:

<u>False Statements Regarding the 675 Note</u>. The documentary evidence shows that Plaintiff's transactional counsel wired $790,000 to Attorney Rebhun's trust account. *See* ¶¶16-17; Ex. 2. It further shows that Attorney Rebhun promptly wired the same amount to Riverside Abstract with a notation indicating that the funds were "[f]or further credit of Bleubell Broad LLC." *See* ¶8; Ex. 3. The transfers coincided with a series of emails from the lender requesting "[p]roof of borrower's balance wire." ¶¶11-14, 86. Yet, Attorney Rebhun has submitted two separate court filings in which he repeatedly and falsely stated that there was no debt, and that "[n]one of the correspondence" leading up to the closing even referenced a debt. *See* ¶¶87-88.[5]

---

[4] Because these deeds were only recently recorded (*see* ¶45), Plaintiff anticipates filing an amended complaint to include additional allegations, claims, and parties relating to the Illinois Transaction.

[5] In his April 25, 2022 letter to this Court, counsel for Mr. Porges again insists that 675 Note is "fictional" and "relates to a fake debt." *See* ECF No. 16 at 1-2.

8

False Statements and Omissions Regarding the Execution of the 675 Note.  Mr. Porges repeatedly stated that he was forced to signed the 675 Note and the New Jersey Assignment late on a Friday afternoon, and that he only agreed to execute the 675 Note because he believed the New Jersey Transaction would be cancelled.  *See* ¶¶91.[6]  Mr. Porges failed to disclose, however, that this was the second set of such documents that he had signed.  ¶¶19-24, 89-92.

False Statements and Omissions Regarding Mr. Porges' English Proficiency.  In a series of court filings in the Collection Action and the COJ Action, Mr. Porges and Attorney Rebhun successfully and disingenuously painted Mr. Porges, an experienced investor, as a sympathetic, uneducated victim who was duped into signing documents he could neither read nor understand without the assistance of his counsel.  *See* ¶¶93-95.  ***But Attorney Rebhun does not speak Yiddish***, a material fact that was omitted by Mr. Porges and his attorneys in six separate court filings.  ¶96.

False Statements Regarding Entry of Judgment in the Collection Action.  In two sworn affirmation, Mr. Porges asserted that he was "blindsided" and that "Judgment was entered against me without notice."  ¶97.  That is false, as evidenced by the January 3, 2022 demand letter sent to Mr. Porges.  *See* Ex. 13.

Fraudulent Rent Rolls.  In the Collection Action, Mr. Porges has accused Plaintiff of providing fraudulent rent tolls to induce him to the New Jersey Transaction, and has even submitted, through counsel, a document he describes as "Falsified Rent Roll."  ¶¶98-100 and Ex. 27.  But these purported "Falsified Rent Rolls" were neither created nor produced by Plaintiff, and they are undated and unsigned.  ¶¶101-102.  There are, however, two indicators of the document's provenance: an Eastern Union logo and an informational footer stating that the data is based on information received from Eastern Union's client.  ¶103.  Insofar as Mr. Porges was the

---

[6] This argument is specious. As a seasoned investor,  Mr. Porges surely knew that a transaction could not be cancelled after it already closed.

only client of Eastern Union vis-à-vis the New Jersey Properties, it appears that he is the source of the rent rolls.  ¶104.

### 2.  *Likelihood of Additional Fraudulent Conduct*

"Appointments are appropriate when, in the judgment of the court . . . leaving the property in the hands of the judgment debtor creates a risk of fraud or insolvency." *Spotnana, Inc. v. American Talent Agency, Inc.*, 2013 WL 22746, at *5  (S.D.N.Y. Jan. 22, 2013) (internal quotation marks and citation omitted).  Here, given their track record, it is highly likely Mr. Porges and Attorney Rebhun are already soliciting buyers for the New Jersey Properties.  Indeed, Evan Hakimi, a Senior Loan Originator at Roc Capital, confirmed that Mr. Porges had already reached out to inquire about a refinance. *See* Boroosan Declaration, ¶¶5-6.

### 3.  *Plaintiff Lacks Alternative Remedies*

Legal process has proven to be inadequate.  So far, Mr. Porges and the entities he is affiliated with and controls have collectively ignored over a dozen of subpoenas with impunity. *See* ¶52-53; ¶¶56-57; 59-62 (18 subpoenas in total).  When Plaintiff moved to compel compliance with the subpoenas, Mr. Porges and Attorney Rebhun successfully stayed the resolution of these motions using fraudulent affirmations.  *See infra.*

Defendant Helena Porges has also ignored duly-issued subpoenas with impunity.  *See* ¶¶54-55.  Although Plaintiff promptly moved for court intervention on February 22, 2022, that application has languished, and the court has not even addressed the order to show cause.  *See* ¶74. To date, the order to show cause remains unsigned in the Collection Action.

Plaintiff has been similarly stonewalled by nearly every other key party involved in this case.  *See generally* ¶¶50-67.  And motion practice to force compliance with discovery demands has been stalled based on the perjured submissions of Mr. Porges and Attorney Rebhun.

Because Plaintiff lacks alternative remedies for protecting his interest in the New Jersey Properties, there is a significant risk that the Mr. Porges will continue to avoid satisfying any judgment, and the Porges Defendants will likely attempt to sell or transfer the New Jersey Properties, the appointment of a receiver is appropriate. *See Blue Citi LLC v. 5Barz Int'l Inc.*, No. 16-cv-9027-VEC, 2019 WL 6976972, at *3 (S.D.N.Y. Dec. 20, 2019) (appointing receiver where "Defendant appears determined to avoid its obligations").

### D. *Ex Parte* **Relief is Appropriate**

For the reasons set forth above, Plaintiff respectfully requests this Court's emergency consideration at its earliest available hearing or submission time and immediate granting of this Motion to avoid the imminent risk of concealment, loss, or diversion of the New Jersey Properties. *Ex parte* relief is also appropriate because all Defendants in this case have defaulted in answering or otherwise responding to the Complaint in this action.

"A party seeking *ex parte* appointment of a receiver must also demonstrate that exigent circumstances exist justifying the appointment on an *ex parte* basis." *Federal Home Loan Mort. Corp. v. Tully Village Edge Apartments*, 1997 WL 10975, at *1 (N.D.N.Y. Jan. 2, 1997); *cf. Greystone Bank v. Tavarez*, No. 09-cv-5192, 2009 WL 10712899, at *2 (E.D.N.Y. Dec. 17, 2009) (noting important of providing "adequate factual support . . . to indicate that dispensing with notice is warranted" and denying *ex parte* application as "insufficient" where "[t]he sole factual support for Greystone's request for a receiver is that the defendants are in default").

## II.   **Expedited Discovery is Warranted**

Although Federal Rule of Civil Procedure 26(d) generally bars a party from seeking discovery before an initial Rule 26(f) conference, a party may seek discovery before that conference "when authorized . . . by [Court] order." Fed. R. Civ. P. 26(d)(1). When considering whether to grant such authorization, "[c]ourts in this circuit apply a flexible standard of

reasonableness and good cause." *3M Co. v. HSBC Bank USA, N.A.*, No. 16 Civ. 5984, 2016 WL 8813992, at *1 (S.D.N.Y. Oct. 20, 2016). Under this standard, courts look to "the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005). Courts have found the good cause necessary to grant a motion for expedited discovery when a plaintiff makes "a strong evidentiary showing of the substantiality of his claims" and defendants "have both incentive and capacity to hide their assets." *Id*; *see also 3M Co.*, 2016 WL 8813992, at *2 (permitting expedited discovery for financial records and credit agreements from a financial institution).

Here, Plaintiff has shown the good cause necessary to seek expedited discovery, as Plaintiff has made a strong evidentiary showing of his claims. Expedited discovery is also warranted in this matter to ensure that Plaintiff is able to locate and recover assets associated with the complex fraud perpetrated by Defendants before those assets are dissipated.

What's more, Mr. Porges – aided by Attorney Rebhun – has both the incentive and the capacity to hide his assets, including, the New Jersey Properties themselves and any rents and proceeds from the properties. These facts provide a sufficient basis for an order granting expedited discovery. *See Cengage Learning, Inc. v. Doe 1*, No. 18 Civ. 403, 2018 WL 2244461, at *4 (S.D.N.Y. Jan. 17, 2018) (granting expedited discovery "to identify Defendants and the accounts used by Defendants in furtherance of their alleged" wrongs).

Finally, Plaintiff's requested expedited discovery does not present complex legal issues nor any associated "significant delay." Specifically, Plaintiff respectfully requests that the Court authorize the issuance of Rule 45 subpoenas to the following entities and individuals, each of which were directly involved in the real estate transactions at issue or are otherwise affiliated with Defendants:

| PARTY | ROLE | DISCOVERY SOUGHT |
|---|---|---|
| Jason J. Rebhun, Esq. | Transactional counsel to Mr. Porges in the New Jersey and Illinois Transactions | All non-privileged emails, text messages, WhatsApp messages, and other correspondence relating to the New Jersey and Illinois Transactions, the Roc Capital Transaction, and the Regeis Transaction.<br><br>All non-privileged final and draft documents (including deeds, corporate documents, contracts, etc.) relating to both transactions.<br><br>Records of wire transfers and trust account information relating to both transactions.<br><br>All rent rolls, banking information, and other materials submitted to the brokers, lenders, and/or underwriters in connection with the New Jersey Transaction, the Illinois Transaction, the Roc Capital Transaction, and the Regeis Transaction.<br><br>Deposition subpoena. |
| Bleubell Broad LLC | Record owner of the New Jersey Properties | All corporate and organizational documents. All documents transmitted to brokers, underwriters, and lenders in connection with New Jersey Transaction and Roc Capital Transaction. |
| Chicago First Tower LLC and Chicago Second Tower LLC | Record owners of the Illinois Properties. | All corporate and organizational documents. All documents transmitted to brokers, underwriters, and lenders in connection with the Illinois Transaction and Regeis Transaction. |
| Eastern Union | Commercial loan broker that facilitated loan to Mr. Porges in the New Jersey Transaction. Ignored information subpoena and subpoena duces tecum. | All correspondence with Jason Rebhun, Chaim Porges, Helena Porges, Broadview Capital LLC, Riverside Abstract LLC, Abraham Kleinman, and any other person involved in the New Jersey Transaction.<br><br>All rent rolls submitted to Eastern Union by or on behalf Mr. Porges in connection with the New Jersey Transaction, including any transmittals. |

| | | All non-privileged correspondence between Eastern Union, Chaim Porges, Jason Rebhun, and any other party involving Mr. Porges and/or the post judgment subpoenas served upon Eastern Union. |
|---|---|---|
| Broadview Capital LLC | Lender in New Jersey Transaction. | All rent rolls, banking information, and due diligence materials submitted to Broadview Capital and/or its underwriters, underwriters in connection with the New Jersey Transaction and/or the Roc Capital Transaction.<br><br>All correspondence (emails, letter, text messages, etc.) between Broadview Capital and Eastern Union, Chaim Porges, Jason Rebhun, Abraham Kleinman, Daniel Kugel, Mark Nussbaum, and/or any other person involved in the New Jersey Transaction and/or the Roc Capital Transaction. |
| Riverside Abstract LLC | Title company in the New Jersey Transaction and the Roc Capital Transaction. Made incomplete production in response to subpoena duces tecum. | All correspondence (emails, letter, text messages, etc.) between Riverside Abstract and Eastern Union, Chaim Porges, Jason Rebhun, Abraham Kleinman, Daniel Kugel, Mark Nussbaum, Evan Hakimi, Roc Capital and/or any other person involved in the New Jersey Transaction and/or the Roc Capital Transaction. |
| Castling Capital LLC | Commercial broker in Illinois Transaction. Ignored deposition subpoena, information subpoena, and subpoena duces tecum. | All correspondence with Jason Rebhun, Chaim Porges, Jonathan Greenwald Madison Title Agency, Abraham Kleinman, and any other person involved in the Illinois Transaction.<br><br>All rent rolls and due diligence materials submitted to Castling Capital by or on behalf Mr. Porges in connection with the Illinois Transaction, including any transmittals.<br><br>All non-privileged correspondence between Eastern Union, Chaim Porges, Jason Rebhun, and any other party involving Mr. |

| | | |
|---|---|---|
| | | Porges and/or the post judgment subpoenas served upon Eastern Union. |
| A&S Capital LLC | Lender in Illinois Transaction | All rent rolls, banking information, and due diligence materials submitted to A&S Capital and/or its underwriters, underwriters in connection with the Illinois Transaction and/or the Regeis Transaction.<br><br>All correspondence (emails, letter, text messages, etc.) between Broadview Capital and Eastern Union, Chaim Porges, Jason Rebhun, Abraham Kleinman, Daniel Kugel, Mark Nussbaum, and/or any other person involved in the New Jersey Transaction. |
| Madison Title Agency LLC | Title company for second, unauthorized Illinois Transaction | All correspondence (emails, letter, text messages, etc.) between Madison Title Agency and Chaim Porges, Jason Rebhun, Abraham Kleinman, Daniel Kugel, Mark Nussbaum, Regeis Chicago Realty and/or any other person involved in the Illinois Transaction and/or the Regeis Transaction.<br><br>Closing documents relating to the Regeis Transaction. |
| Jonathan Greenwald | 50% owner of Illinois Properties | All non-privileged correspondence (emails, letter, text messages, etc.) with Chaim Porges, Jason Rebhun, Madison Title Agency, A&S Capital LLC, Abraham Kleinman, Daniel Kugel, Mark Nussbaum, Regeis Chicago Realty and/or any other person involved in the Illinois Transaction and/or the Regeis Transaction. |
| Regeis Chicago Realty LLC | Purchaser of Illinois Properties | All non-privileged correspondence with Chaim Porges, Jason Rebhun, Jonathan Greenwald, Madison Title Agency, and any other person or entity relating to the Regeis Transaction.<br><br>Copies of all draft and final documents relating to the Regeis Transaction.<br><br>Corporate and organizational documents. |

| | | |
|---|---|---|
| Skillman 4 LLC<br>7549 Kenwood LLC<br>Chicago Broad LLC<br>CP Renovations Inc.<br>Superb Funding LLC<br>DMBRG LLC<br>1074 Fulton Street LLC<br>Rent Right LLC | Entities controlled by Mr. Porges. Ignored all subpoenas. *See* ¶¶55-61. | For each entity, Plaintiff will seek:<br><br>• Corporate and organizational documents<br>• Banking records<br>• Documents relevant to Mr. Porges' control over the responding entity |
| Rachel Porges | Wife of Mr. Porges | Documents pertaining to Rachel Porges' ownership of Skillman 4 LLC.<br><br>Documents pertaining to the conveyance of title to Mr. Porges' primary residence Skillman 4 LLC.<br><br>Banking records. |
| 42 Starr LLC | Entity associated with Mr. Porges. Ignored information subpoena.<br><br>*See* ¶66. | Corporate and organizational documents.<br><br>Documents pertaining to Mr. Porges's interest and/or role in 42 Starr LLC.<br><br>Banking records for 42 Starr LLC. |

**CONCLUSION**

For the above reasons, the Court should, respectfully, grant Plaintiff's motion for a receiver over the New Jersey properties.  Plaintiff's motion for expedited delivery should also be granted and the Court should authorize Plaintiff and its counsel to issue and serve subpoenas under Federal Rule of Civil Procedure 45 to the entities and individuals named above immediately and prior to any Rule 26(f) conference held in connection with this action.

Dated: Brooklyn, New York
      May 3, 2022

**LAW OFFICES OF MOSHE BOROOSAN, P.C.**

*/s/ Moshe O. Boroosan*
MOSHE O. BOROOSAN
1318 Avenue J, 2nd Floor
Brooklyn, NY 11230
(404) 857-6229
moshe@boroosanlaw.com

*Attorneys for Plaintiff Abraham Kleinman*